No. 21,156.

JAMES M. WALMSLEY, *Appellee*, v. THE RURAL TELEPHONE ASSOCIATION OF DELPHOS, *Appellant*.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Telephone Wires Crossing Highway—Sufficiency of Evidence*. Negligence in the maintenance of a telephone wire across a public highway is sufficiently established when it is shown that the wire hung so low as to interfere with a customary use of the highway.

2. SAME—*Injuries—Proximate Cause—Question for Jury*.
   "Negligence, to be the proximate cause of an injury, must be such that a person of ordinary caution and prudence would have foreseen that some injury would likely result therefrom, not that the specific injury would result." (*Railway Co. v. Parry*, 67 Kan. 515, syl. ¶ 2, 73 Pac. 105.)

3. SAME—*Telephone Wire Over Highway—Injuries—Prima Facie Case —Shifting of Burden of Proof*. When a plaintiff has proved that he sustained injuries through the dangerous situation of a telephone wire hanging across a public highway, the burden passes to the defendant to show that the dangerous situation of the wire was not due to the act of the defendant and had not existed for such length of time as to charge the defendant telephone company with notice of its defective condition.

4. SAME—*Trial—Record Examined—No Prejudicial Error*. The pleadings, the evidence, the instructions given and refused, and the judgment, in an action to recover damages for personal injuries sustained through the negligent maintenance of a telephone wire across a public highway, examined, and no prejudicial error discerned therein.

Appeal from Ottawa district court; DALLAS GROVER, judge. Opinion filed December 8, 1917. Affirmed.

*Thomas L. Bond*, of Salina, for the appellant.
*E. C. Sweet*, of Minneapolis, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment awarding damages to plaintiff for injuries sustained through the alleged negligence of defendant in the maintenance of its telephone wire across a public road.

The plaintiff was riding on a low iron-truck wagon and hayrack with a large steel grain bin loaded thereon. He carried a loaded rifle and was standing on the right front end of the hayrack. Plaintiff's servant was driving the team of horses at a walking pace. The telephone wire across the highway hung so low that it caught the grain bin and caused the wagon to upset, and the plaintiff was thrown to the ground. The bin struck the rifle and it was discharged; the bullet entered plaintiff's chest, and he was severely wounded.

Defendant's answer was a general denial and contained an allegation that the telephone wire was properly maintained so as not to incommode the public in the ordinary and reasonable use of the highway. Defendant's answer also contained a plea of contributory negligence.

The jury's general verdict was for $3,000, and a remittitur of $1,000 was conceded by plaintiff. Two special questions submitted by the court were answered:

"1. Q. At the time of the injury complained of was the plaintiff exercising ordinary care for his own safety? A. Yes.

"2. Q. At the time of the injury complained of did the telephone wire interfere with the use of the highway for ordinary purposes of travel? A. Yes."

The plaintiff's evidence tended to prove all the allegations of his petition. The facts were simple. The level of the hayrack was about three feet above the ground. The height of the bin was about eight feet at the eaves where the telephone wire caught the bin. Therefore the wire hung down or sagged to about eleven feet from the ground. It was shown that the hauling of threshing machines and loads of hay is a common use of public roads, and such machines and loads with their drivers riding thereon reach to a height of eleven feet or more. It was also shown that the hauling of steel grain bins on the highway is common. The stringing of telephone wires across highways at the low height of eleven feet is *prima facie* negligence. (37 Cyc. 1645, 1646.)

It is contended by defendant that there was a total failure of proof that the telephone company knew that its wire was hanging so low as to endanger the use of the highway, and a total failure of proof that it so hung for such a length of time that the company should have known of its negligent condition. The proof did fail in that respect. Will that exempt the defendant from liability? If so, it will seldom avail one injured on a public highway through the negligent hanging of wires to seek a recovery for damages, for unless the injured person was acquainted in the neighborhood it would be impossible for him to find witnesses to show that the negligent or dangerous hanging of the wires had existed for some length of time. If his mishap occurred on a lonely and unfrequented highway there would be no witnesses to prove the condition or negligent height of the wires prior to his accident. On the other hand, it is always the duty of a telephone company to maintain its wires at a safe height, and it is the duty of the company to make repairs promptly if through wear and tear, or storm, or vandalism, the wires come down to a dangerous level. In other words, a telephone company must look after its property. If this company did look after its property at reasonable intervals, it knew when its wires were last seen in a safe situation, and could have readily shown the facts. Then, of course, if it had proved that shortly before the plaintiff's accident the wires were hanging safely and properly, it would not ordinarily be liable for an injury growing out of a sudden disrepair of its wires which it did not know of, and could not reasonably have known of in time to repair before the plaintiff was injured. The court holds, therefore, that when the plaintiff proved the negligent condition of the wire, and that it caused his injury, his *prima facie* case was established, and the burden of proof then passed to the defendant to show that the negligent condition had not existed a sufficient length of time for the company to learn of its defective condition, or to charge it with notice thereof. This imposed no unreasonable burden on defendant. It is simply an incident among the many responsibilities attaching to those privileged persons and corporations who obtain and enjoy special rights of occupancy in the public highway.

That the plaintiff establishes his *prima facie* case when he shows the dangerous situation and condition of defendant's

property which caused his injuries is supported by the philosophy and reasoning of the following analogous cases: *O'Connor v. Mennie,* 169 Cal. 217, 146 Pac. 674; *Chenall v. Palmer Brick Co.,* 117 Ga. 106; *Armour v. Golkowska,* 202 Ill. 144; *American Exp. Co. v. Terry,* 126 Md. 254; *Thomas v. Western Union Telegraph Company,* 100 Mass. 156; 37 Cyc. 1644, 1645. (See, also, *Weaver v. Dawson County Mutual Telephone Co.,* 82 Neb. 696.)

That the burden then shifts to the defendant to show that the dangerous situation had not existed so long as to charge the defendant with notice of it is supported by the reasoning of the following cases: *The Joseph B. Thomas,* 81 Fed. 578; *Cincinnati, etc., Ry. Co. v. South Fork Coal Co.,* 139 Fed. 528; *Jacks v. Reeves,* 78 Ark. 426; *Ligon's Admr. v. Evansville R. Co.,* 165 Ky. 202; *Talge Mahogany Co. v. Hockett,* 55 Ind. App. 303; *Gibler v. Railroad,* 148 Mo. App. 475; *May v. Railroad Co.,* 75 W. Va. 797; 37 Cyc, 1644, 1645.

A curious contention was made in the oral argument, and slightly mentioned in the brief, that the plaintiff could not recover because he did not have a hunter's license at the time he was injured. Plaintiff admitted that he had no license, and that shortly before the accident he had jumped off the wagon to get a shot at a rabbit, and that he planned to shoot some wolves in a field towards which he was going. There is no merit in this contention. The want of a hunter's license and the breach of the hunter's license law did not contribute in the slightest degree to plaintiff's injuries. (*Clark v. Powder Co.,* 94 Kan. 268, 279, 146 Pac. 320; *Oplotnik v. Mining Co.,* 95 Kan. 545, 547, 148 Pac. 616.)

Touching the carrying of the rifle, the court sufficiently instructed the jury:

"9. It is the claim of the defendant that plaintiff was negligent in the manner in which he was using and holding his rifle at the time of the accident and that such negligence contributed to his injury; and the jury are instructed that if you find from the evidence that the plaintiff was negligent as claimed by the defendant and that such negligence contributed to his injury, then your verdict should be for the defendant."

The plaintiff's evidence was that he was carrying the rifle at "half notch" or "safety," and that the steel bin struck the rifle, causing it to be discharged. The jury's first special find-

ing is a determination that plaintiff was not guilty of contributory negligence in his manner of carrying the rifle.

A number of criticisms are made touching the instructions given and refused, but little can be discovered therein which would warrant discussion. Some fault is found with the court's definition of negligence, but it was sufficiently clear and simple to serve the purpose of this action, and no error can be traced to it. Certain instructions asked were sufficiently covered by those given, and no prejudicial error can be noted in the refusal of the others requested.

Another question in this case concerned the proximate causal connection between defendant's negligence and the consequences of that negligence. The defendant was negligent in the maintenance of its telephone wire. Was that negligence the proximate cause of the plaintiff being shot? That some mishap was likely to occur to people riding and driving with customary loads on the highway, through the negligent manner of stringing the wire could have been anticipated. Damage of some sort was natural and probable, almost inevitable. That somebody would be- shot through defendant's negligence would not have been anticipated. But the law does not say that if the particular injury arising from the negligence cannot be anticipated a recovery cannot be had. That some damage, some injury, would probably arise from the existing negligence and that it could reasonably have been expected is all that the law requires to justify a recovery. ' (*Railway Co. v. Parry*, 67 Kan. 515, syl. ¶ 2, 73 Pac. 105; *Hill v. Railway Co.*, 81 Kan. 379, 382, 105 Pac. 447; *Hartman v. Railway. Co.*, 94 Kan. 184, 189, 146 Pac. 335.)

The judgment is affirmed.