No. 41,311

WALTER HENDERSON, *Appellant,* v. KANSAS POWER & LIGHT COMPANY, a Corporation, *Appellee.*

(339 P. 2d 702)

Opinion filed May 16, 1959.

*Wendell L. Garlinghouse,* of Topeka, argued the cause, and *Warren W. Shaw, William Hergenreter, Carl Quarnstrom* and *Elwaine F. Pomeroy,* all of Topeka, were with him on the briefs for appellant.

*Robert E. Russell,* of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove, Willard N. Van Slyck, Jr., William B. McElhenny, O. R. Stites, Jr.,* and *James L. Grimes, Jr.,* all of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover damages for personal injuries sustained by plaintiff when electricity from defendant's high-voltage power line jumped or arced into the mast portion of a television antenna when plaintiff was assisting in turning it.

In a previous appeal (*Henderson v. Kansas Power & Light Co.,* 181 Kan. 625, 313 P. 2d 257) it was held that plaintiff's amended petition stated a cause of action. The amended petition was summarized in that opinion and will not be repeated here except to say it alleged plaintiff's injuries were caused by defendant's negligence in (1) maintaining high-tension electrical wires over private property without the permission of, and without obtaining an easement from, the owner when defendant knew, or in the exercise of due care should have known, that such electrical wires created a highly dangerous hazard; (2) erecting and maintaining the power line in a residential area without insulating the electric wires; (3) main-

taining the power line without posting warning signs as to its nature and extreme dangers, and (4) erecting and maintaining the power line at a height insufficient to avoid contact with a radio or television antenna.

Following judgment in the former appeal, defendant filed an amended answer denying all of the material allegations of the amended petition and alleged that any injuries sustained by plaintiff were caused by his own negligent acts and omissions. By reply plaintiff denied all allegations in the answer inconsistent with those alleged in the amended petition.

With the issues thus joined, trial by jury was commenced. At the close of plaintiff's case, the trial court sustained defendant's demurrer to the evidence, stating there was not sufficient evidence to show that any of the alleged acts on the part of the defendant were in fact negligent and the evidence did not prove that such acts were the cause of plaintiff's injuries. Hence, this appeal.

Evidence most favorable to plaintiff is summarized: On Sunday, September 26, 1954, the defendant maintained a 33,000 volt, three-phase electric power line located along the north side of an alley running parallel to 6th and 7th streets in Topeka, the portion here involved is between Lake and Chandler streets. The alley is adjacent to the residential property known as 609 Lake street owned by A. W. Voigt. The house faces east and the south side abuts the alley; the rear (west) portion is constructed with a story and a half airplane type roof and at the highest point is 22.4 feet above the top of the foundation which is one or two feet above the ground. The southwest eave overhangs into the north side of the alley about a foot, however, the southwest corner of the house is approximately one inch north of the alley line. Voigt had owned the property since 1897 and had never given defendant permission or an easement to maintain the line over his property although he had known for many years the wires overhung his house.

The power line was installed in 1926 and originally carried 13,200 volts although it was built to carry 33,000 volts and was carrying that voltage at the time of the accident. Two power line poles were in the alley in the immediate vicinity of the house. From the top of the foundation, the height of the top wire on the east pole was 45.7 feet and the lower wire was 41.6 feet. With respect to the west pole, the top wire was 43.9 feet above the top of the foundation and the lower wire was 39.8 feet. The two north

electric wires (one being the lower wire) directly overhung the south portion of the roof and encroached upon Voigt's property about 1.2 feet, thus the lower wire was 16.1 feet above the highest part of the roof. Following the accident and in September 1955, the power line was removed at Voigt's request.

Prior to the erection of the television antenna, a platform 14 inches high had been constructed at the rear of the house upon which the antenna pole was mounted. The width of the house at the rear was 20 feet and the platform was located approximately 9.6 feet from the south or alley side of the house and 10.4 feet from the north side.

The antenna pole consisted of four 10-foot sections of telescoping pipe which fitted into each other and overlapped six to seven inches at each joint, making the full height of the antenna when placed upon the platform 39 feet 8 inches above the ground. An antenna mast with horizontal arms extending 44 inches was fastened to the pole. The guy wires were attached to a guide ring on the pole at the bottom edge of the top section, which were fastened, one to the northeast corner of the airplane roof, one to the southeast corner, and the third to a little shed directly west. The pole fitted into a base on the platform, which was fastened by setscrews to stabilize and prevent it from turning. It was attached to the house with a roof clamp.

The antenna was installed on Saturday, September 25, 1954, by the plaintiff and one Herschel Starling who had sold it to Joe Redman. Redman resided in the 609 Lake street property at that time, and was a son-in-law of Voigt. Plaintiff was regularly employed by the City Water Department at a salary of $255 per month. He was a brother-in-law of Starling, and assisted him in the installation of television sets and antennas.

On the following morning, September 26, 1954, plaintiff and Starling had made a call and on their way home decided to stop and see how Redman's television was operating. After a conversation about the reception, plaintiff, Starling and Redman went around to the back of the house to turn the antenna "into the channel more" to get better reception from the Kansas City stations. Starling loosened the setscrews and attempted to turn the antenna pole but could not do so. He asked plaintiff and Redman to help him. They were about four or five feet away at that time. The antenna pole was not leaning in either direction and the guy wires were

not loose. When they walked up and took hold of the pole to help turn it "there was a terrific explosion" and plaintiff was knocked unconscious. Starling and Redman were killed by electrocution and plaintiff sustained severe electrical shock and burns resulting in permanent partial disability and permanent disfigurement.

At the trial plaintiff testified he had never been to the Redman premises prior to September 25, 1954, and on that date he attached the two guy wires to the roof of the house; that he just "casually noticed" the power lines and knew they were electric wires, but they did not particularly attract his attention, they were "only wires on poles." He stated he did not know they overhung the top of the house but assumed they were in the alley where they were supposed to be.

Several witnesses in the neighborhood who had frequented the alley for as many as 30 years testified there were no warning signs on the power line poles or at any other place in the alley warning of the extreme danger of the high-voltage power line at the time of the accident, and that they had never observed any such signs. There were numerous other electric and telephone wires in the alley and immediate area.

David E. Shaad, a licensed general consulting engineer, testified as an expert witness for plaintiff that the 33,000 volt power line could have been constructed on poles other than the "T" type of crossarm used by defendant; that it could have been constructed on an "H" type structure with two poles and a cross member, or on a side-arm or alley-arm structure, which would have prevented the electric wires from being over Voigt's property. That is the purpose of the "H" or alley-arm type structure and hardware was available for that type of construction. He further testified that the electric wires carrying 33,000 volts could have been insulated so as to prevent the escape of electricity even though they might come in close proximity to, or in actual contact with, a grounded metal object, and that they could also have been insulated and installed under ground. In answer to a hypothetical question he stated that in his opinion the current that caused the explosion and electrical shock and burns to the men could have come *only* from the 33,000 volt power line.

In determining the sufficiency of plaintiff's evidence as against defendant's demurrer, the elementary rule is that it is to be considered in the light most favorable to the plaintiff, resolving all inferences in his favor, disregarding that which is unfavorable

and not weigh any part that is contradictory, or any differences between direct and cross-examination, and if there is any evidence which sustains plaintiff's case on any theory, the demurrer must be overruled. (*Creten v. Chicago, Rock Island and Pac. Rld. Co.,* 184 Kan. 387, 337 P. 2d 1003.) See, also, 7A West's Kansas Digest, Negligence, § 136 (9), (10), (25), (26); 2 West's Kansas Digest, Appeal and Error, § 925 (5), and 9 West's Kansas Digest, Trial, § 156 (2), (3).

Another rule which requires application is that in determining whether a defendant is guilty of negligence, when tested by a demurrer, the question must be submitted to the jury if the facts of record are such that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon, and, further, the question whether a negligent act is the proximate cause of an injury, and whether an ordinarily reasonable, prudent man would have foreseen that injury might have occurred as a result of the negligent act, is also a question of fact for the jury. (*Mehl v. Carter,* 171 Kan. 597, 237 P. 2d 240; *Emmerich v. Kansas City Public Service Co.,* 177 Kan. 443, 450, 280 P. 2d 615; *Bishop v. Huffman,* 177 Kan. 256, 278 P. 2d 588.) See, also, 4 Hatcher's Kansas Digest (Rev. Ed.), Negligence, § 74, 75.

Another well established rule is that, while negligence is never presumed but must be established by proof, it may be proved by circumstantial evidence where direct proof is lacking. (*In re Estate of Modlin,* 172 Kan. 428, 435, 241 P. 2d 692; *Haga v. Moss, Administrator,* 181 Kan. 171, 181, 311 P. 2d 281; *Worden v. Union Gas System,* 182 Kan. 686, 688, 324 P. 2d 501.)

As preliminary to discussing the contentions of the parties, we note general applicable rules pertaining to distributors of electricity. A high-voltage power line is one of the most dangerous things known to man. Not only is the current deadly, but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless. Therefore, as a general rule electric companies which erect and maintain such lines are under a duty to exercise the highest degree of care to protect the public from danger. (*Railway Co. v. Gilbert,* 70 Kan. 261, 78 Pac. 807; *Wade v. Electric Co.,* 94 Kan. 462, 465, 147 Pac. 63; *Snyder v. Light Co.,* 98 Kan. 157, 160, 165, 157 Pac. 442; *Worley v. Kansas Electric Power Co.,* 138 Kan. 69, 23 P. 2d 494; *Jackson v. Kansas Gas & Electric Co.,* 152 Kan. 90, 97, 102 P. 2d 1038.)

In *Murphy v. Central Kansas Electric Cooperative Ass'n,* 178

Kan. 210, 284 P. 2d 591, it is stated that the degree of care required of distributors of electricity is the degree which would be used by prudent men engaged in the industry, under like conditions and commensurate with the dangers involved and the practical operation of the plant, to guard against contingencies which can be reasonably foreseen and anticipated, but such distributors are not liable for occurrences which cannot be reasonably anticipated and are not insurers against accidents and injuries.

In 18 Am. Jur., Electricty, § 48, p. 443, it is said:

". . . To declare that the utmost care must be used to prevent injury sounds different in statement than to say that ordinary care must be used in view of all the circumstances; but when analyzed, the meaning is not far different, for the ordinary care required under the circumstances is relatively a high degree of care when put into practice."

It is further stated, pp. 444-446:

". . . According to numerous decisions, where the wires maintained by a company are designed to carry a strong and powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured, if not killed, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its plant to prevent such injury, *especially where high-tension wires are suspended over the streets of populous cities or towns, for here the danger is great, and the care exercised must be commensurate with it.* . . ." (Emphasis supplied.)

We turn now to the specific acts of negligence alleged in the amended petition. With respect to plaintiff's first and third allegations of negligence, the evidence clearly shows that defendant's power line extended over Voigt's property about 1.2 feet without permission or easement and was directly over a portion of the roof to which the antenna was fastened. The expert testimony was that the power line could have been constructed so as to be in the alley rather than over Voigt's property. Moreover, there were no warning signs placed on the poles in the alley or anywhere else, and, so far as the evidence shows, there never had been. Do these facts show negligence on the part of the defendant? We think they do. While the antenna was installed close to the boundary line and thus close to defendant's power line, Redman had the right to the use of the property up to the boundary line, and, accordingly, he was within his rights in directing where the antenna be installed. Had the power line not overhung the roof the distance it did and had there been warning signs warning that the lines carried a

deadly current of 33,000 volts, two men might not have been killed and the plaintiff severely injured.

A similar situation was presented in *Worley v. Kansas Electric Power Co.*, supra, and the court held that the question of defendant's negligence was properly submitted to the jury and that the trial court did not err in overruling defendant's demurrer to plaintiff's evidence. In that case the defendant had constructed a power line in a *rural* area so that it extended over private property and failed to place warning signs warning of the danger. The tenant of the owner built a silo near the boundary line and close to the power line. His employee was electrocuted while tramping ensilage in the silo. The defendant did not learn of the erection of the silo close to its line until after the accident occurred. In the opinion Mr. Chief Justice Johnston, speaking for a majority of the court, stated:

"The evidence shows clearly enough that the line was over on the farm. The defendant had authority to build the line in the highway but never was granted power to build over the farm. Although defendant may not have known that the line was built outside of the highway and on private property, it was, nevertheless, a trespasser. It is true that the line had been there six years, apparently without complaint, but it was incumbent on the defendant to ascertain the location of its wires and to maintain them so as not to interfere with the use of private property over which it was built. *While the tenant may have been unwise in building his silo so close to the power line, he had the right to the use of the property up to the boundary line.* He testified that he did not know that the silo was so close as to be within the danger zone. He knew that the wires carried electricity, and states that he would not have built it so close if he had known of the danger. It is true that the day before the accident his nephew received a shock when he touched a wire. . . . There were no tags or notices on the line warning him or anyone else, unacquainted with the fact, that they carried a high and deadly voltage. As stated, the jury found that the lack of warning signs was one ground of negligence which it attributed to the defendant. The defendant's claim that it was not usually done in rural districts is no excuse or release from liability, if it was necessary for the protection of the public or abutting owners or their employees, especially those not familiar with electricity and the danger of electric wires bearing a high voltage.

"Where a company has built a power line which extends over private property and is carrying a killing voltage, it is its duty to exercise the highest degree of care that it shall not injure owners of the property or their employees lawfully engaging in the use of the property, and who may not have knowledge of the danger. *We think it is not an unreasonable requirement that such a company should place warning signs of danger for the protection of those coming within the danger zone.* Such warnings might have saved the life of Davis. Under the facts of the case and the well-recognized rule of the high

degree of care required of those transmitting so dangerous a force, we cannot hold that the placing of warning signs was an unreasonable requirement nor that the failure to place them did not amount to negligence on the part of the defendant." (l. c. 73, 74.) (Emphasis supplied.)

Surely, if it is not unreasonable to require a power company to place warning signs of danger for the protection of those coming within the danger zone in a *rural* area and if such failure presents a question for the jury with respect to defendant's negligence, it follows as a natural conclusion that in a thickly populated *urban* area the construction and maintenance of a power line over private property carrying a deadly current of 33,000 volts without warning signs warning of the danger likewise presents a question of fact for the determination of the jury. We are of the opinion the trial court erred in sustaining defendant's demurrer with respect to those two specific acts of alleged negligence. See 29 C. J. S., Electricity, §§ 39, 42, pp. 575-577, 580-585; *Elliott v. Black River Elec. Co-op.*, 233 S. C. 233, 104 S. E. 2d 357, 368. In *Coatney v. Southwest Tenn. Elec. Mem. Corp.*, 40 Tenn. App. 541, 292 S. W. 2d 420, it was held that whether defendant was negligent in placing an uninsulated, high-voltage power line over private property without notice or warning to the resident or public was a question of fact for the jury.

With respect to the second and fourth allegations of negligence, there was no direct evidence that the electric wires over Voigt's property were uninsulated. However, defendant concedes in its brief that they were uninsulated. Thus, the question is whether defendant had a duty to have the wires insulated under the particular circumstances presented. Courts generally, if not universally, hold that the duty to exercise the highest degree of care in the maintenance of high-voltage power lines over private property or streets and highways requires the power company to insulate its wires carefully and properly at all places where others have the right to go, either for work, pleasure or business, or where there is a reasonable probability of contact with them, but the duty to insulate is not absolute and if the company maintains its wires at such height above ground that there is no reason to anticipate that contact will be made with such wires, then insulation is not required. The wires must be either insulated or placed beyond the danger line of contact at places where contact is reasonably to be anticipated. (18 Am. Jur., Electricity, §§ 93, 96, pp. 485-487, 490-491; 29 C. J. S., Electricity, § 44, pp. 589-591; Annotations 14 A. L. R. 1023,

1024-1030, and 56 A. L. R. 1021-1025.) In *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778, 28 L. R. A. (n. s.) 677, it was held:

"It is the duty of an electric light and power company having wires charged with a high voltage of electricity suspended upon poles across a street in a city, upon which street the moving of a building of greater height than the wires is reasonably to be anticipated, to insulate the wires at such crossing or to take such other precautions as are necessary to protect any person who is liable to be upon such building and to be brought in contact with such wires."

In the opinion it was said:

"It is a matter of common knowledge that wires carrying only a low voltage, like, for instance, a telephone wire, are not liable to produce any injury by contact, and that wires carrying a high voltage, as shown in this case, are extremely dangerous in case of contact. The court submitted to the determination of the jury, as a question of fact, whether under all the evidence in the case the defendant was guilty of negligence, and whether the deceased was guilty of contributory negligence, and by its instructions told them that if under all these facts of the case persons were likely to come in contact with these wires, carrying the high voltage shown by the evidence, the defendant was under obligation to have the wires insulated so that injury would not result therefrom. If, on the other hand, the deceased knew of their dangerous character, and so knowing purposely came in contact with the wires, he was guilty of contributory negligence." (1. c. 73.)

We think the court's instructions to the jury in that case were in accord with the principles laid down in the numerous cases cited with approval in *Railway Co. v. Gilbert,* 70 Kan. 261, 78 Pac. 807. In the Gilbert case *Fitzgerald v. Edison Electric Co.,* 200 Pa. St. 540, 50 A. 161, 86 Am. St. Rep. 732, was quoted with approval as follows:

"Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them." (1. c. 265.)

In *Snyder v. Light Co.,* 98 Kan. 157, 157 Pac. 442, the court said:

"Although the principal contention of the defendant is based on a challenge of the evidence, there is but little conflict in it. It was the acknowledged duty of the defendant to insulate its wires. They were not insulated at the place of contact and had been unprotected for several years before the plaintiff was injured by the escaping current. It appears that the plaintiff was upon her own premises, where she had a right to be, and no one would attribute fault to her for going to the aid of the boy whose clothing was on fire. The current

escaped from the control of the defendant through its neglect. It is clear that if the defendant's wires had been properly insulated the plaintiff would not have been injured. . . ." (l. c. 159.)

It was further stated:

". . . To secure protection as against electric wires of dangerous voltage, it is essential that they should not only be *safely placed* but *should be carefully covered* with insulation to prevent the escape of the destructive current. Even ordinary care requires that the current should be confined . . . It was a continuing duty of the defendant to keep its wires insulated . . ." (l. c. 160, 161.) (Emphasis supplied.)

See, also, *Wade v. Electric Co.,* supra; *Logan v. Electric Co.,* 99 Kan. 381, 161 Pac. 659, L. R. A. 1917 E 258; *Worley v. Kansas Electric Power Co.,* supra. Moreover, it has been held that the impracticability of insulating wires carrying a high voltage, and the expense of doing so, will not excuse the failure of the defendant to insulate nor preclude the plaintiff from recovering damages for injury and loss (*Worley v. Kansas Electric Power Co.,* supra, p. 75; *Logan v. Electric Co.,* supra).

In view of the foregoing, we are of the opinion the facts here presented are such that the question as to whether defendant was negligent in failing to insulate its wires or maintain them at a height so as to prevent contact therewith by an antenna mast, was one upon which reasonable minds could differ and was therefore a question of fact for the jury.

Defendant contends it could not reasonably foresee or anticipate that a television antenna would be installed in close proximity to its power line, which would be of such height as to come into contact with its power line and therefore it was not guilty of any negligence as a matter of law. We do not agree. The test of negligence or the absence of negligence on the part of the defendant was not whether it should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable thing that might be done upon Voigt's property by people who had a right to go there, either for work, pleasure or business (*Worley v. Kansas Electric Power Co.,* supra; *Walmsley v. Telephone Association,* 102 Kan. 139, 143, 169 Pac. 197). Certainly, the erection of the antenna was a reasonable use of the property and the owner or his tenant had a right to the use of the property up to the boundary line.

In *Snyder v. Light Co.,* supra, it was held that the jury was warranted in finding that the throwing of a wire with a stone at-

tached over the uninsulated wire of the power line was an act to be anticipated by the company and against which it should have provided. In *Winegarner v. Edison,* supra, it was held that the company could reasonably be required to anticipate the movement of buildings down the street which would be of a greater height than the wires. See, also, *Logan v. Electric Co.,* supra. If a power company can be said to be under a duty to foresee and anticipate that a house being moved down a street might come into contact with its power line, and that a small boy might throw a wire with a stone attached to it over a power line, it is not unreasonable to say that a power company should foresee and anticipate that a television antenna of normal height might be erected upon private property, particularly in this day and age when television is commonplace. Whether the defendant should have anticipated that such an antenna mast might come in contact with its uninsulated wires was fairly a question for the determination of the jury (*Snyder v. Light Co.,* supra, p. 163.)

Defendant argues that since the evidence does not show it failed to build and maintain its lines in accordance with the approved practices of the industry and in accordance with the rules, regulations and laws applicable thereto, it was not, as a matter of law, guilty of any negligence. The point is not well taken. The authorities are not helpful to the defendant in this respect because conformity to customary practices of the industry is not, in and of itself, a defense to a charge of negligence. (*Murphy v. Central Kansas Electric Cooperative Ass'n,* supra, p. 215; 18 Am. Jur., Electricity, § 50, pp. 446, 447.) Furthermore, the evidence was that by use of side-arm or alley-arm type construction the power line could have been removed from overhanging Voigt's property and lawfully placed in the alley. However, assuming *arguendo* that the power line was constructed and maintained in conformity to the customary practices of the industry, a jury question as to defendant's negligence was still presented.

The defendant invokes the rule that if the trial court renders a correct judgment under the facts and the law, such judgment will not be disturbed merely because wrong reasons are given for its rendition (*Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851, Syl. ¶ 1; *Goodloe v. Jo-Mar Dairies Co.,* 163 Kan. 611, 618, 620, 185 P. 2d 158) and argues that the evidence shows plaintiff to be guilty of contributory negligence as a matter of law, therefore, the order

sustaining the demurrer should be affirmed. We do not agree. Plaintiff had been to the premises only once prior to the day in question, which was the preceding day when the antenna was installed without incident. There were a number of telephone and electric wires in the area, and, as he stated, he "just casually" noticed the wires in question and knew they were electric wires and that electric wires were dangerous, but they did not particularly attract his attention. He did not see any signs warning of the dangerous character of the wires, or that they were carrying 33,000 volts, nor did he have a comprehension of the risk involved if he came in close proximity to them. In *Webster v. Kansas Power & Light Co.*, 182 Kan. 626, 629, 323 P. 2d 643, it was said:

". . . Mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery even though there may be added to the knowledge of danger a comprehension of some risk. Moreover, knowledge of the offending instrumentality does not constitute contributory negligence as a matter of law." (l. c. 629.)

To the same effect are *Wainscott v. Carlson Construction Co.*, 179 Kan. 410, 295 P. 2d 649; *Bradley v. Allis Hotel Co.*, 153 Kan. 166, 109 P. 2d 165. As previously stated, not only is the current carried in a power line deadly, *but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless.*

In *Rambo v. Electric Co.*, 90 Kan. 390, 133 Pac. 553, it was held that it was not contributory negligence as a matter of law for an experienced lineman, who was electrocuted while climbing a pole which required him to pass between defectively insulated high-tension electric wires to fail to ask that the current be turned off, which would have been done at his request, and whether he was negligent was a question for the jury. In the opinion it was said:

". . . If the danger was not so great and so apparent that a person of ordinary prudence would not encounter it, he was not negligent as a matter of law. . . ." (l. c. 393.)

In *Wade v. Electric Co.*, supra, the deceased (Wade) was electrocuted when he came into contact with heavily charged, uninsulated electric wires. Wade had asked one of the men with him to climb the derrick when he was moving down the road and lift the wires so they would clear the derrick. The man refused and Wade then climbed the derrick for that purpose. He was warned to be careful and replied that he had handled hundreds of such

wires. It appeared that he did not know the wires were dangerous, was an uneducated man without electrical experience and acted as if he believed the wires were not dangerous. The court held that fair-minded men might differ as to whether a person of ordinary prudence would do what Wade did and therefore it could not be determined as a matter of law that he was guilty of contributory negligence. See, also, *Wade v. Electric Co.*, 98 Kan. 366, 158 Pac. 28, a second appeal of the same case. In view of the foregoing, we cannot say the plaintiff was guilty of contributory negligence as a matter of law.

Defendant cites and relies upon *Sullivan, Administrator, v. Davidson*, 183 Kan. 713, 332 P. 2d 507, but that case it not controlling here for the reason that it was an action against the employer of the electrocuted farm hand rather than against the electric company; consequently, the duty of care owed is not the same, and in that case the decedent was thoroughly familiar with the surroundings in which he was working while in the instant case the plaintiff had been to the premises only once prior to the day in question.

We conclude that the questions of defendant's negligence, the proximate cause of the injuries, the foreseeability of the injuries and the contributory negligence of the plaintiff were all questions about which reasonable minds might differ and presented questions of fact for the jury. This conclusion is supported by the recent case of *Kingsport Utilities, Inc., v. Lamson*, 257 F. 2d 553, wherein a similar situation was presented and the alleged grounds of negligence on the part of the defendant were almost identical with those in the instant case. The court held that the questions whether the electric company was negligent, whether such negligence was the proximate cause of the injury, whether the electric company should have foreseen the injury and whether plaintiff was guilty of contributory negligence were for the jury.

It follows that the order of the trial court sustaining defendant's demurrer to plaintiff's evidence should be reversed and the case remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

PRICE, J., dissents.