Darrell SLATER, Plaintiff,

v.

BOARD OF PUBLIC UTILITIES and City of Kansas City, Kansas, Defendants.

Richard KEMP, Plaintiff,

v.

BOARD OF PUBLIC UTILITIES and City of Kansas City, Kansas, Defendants.

Civ. A. Nos. 87–2319–S, 87–2320–S.

United States District Court, D. Kansas.

Dec. 29, 1988.

Maurice J. Ryan, Kathryn Pruessner Peters, Wynetta Massey, Asst. City Attys., Kansas City, Kan., for defendants.

Joseph B. Bott, Kansas City, Mo., William L. Roberts, Kansas City, Kan., for lien holder Steel Constructors, Inc. and Pennsylvania Nat. Mut. Cas. Ins. Co.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment. These consolidated cases arise out of the injury of two ironworkers on a bridge construction site in Kansas City, Kansas. A piece of rebar the two workers were handling came into contact with a power line owned by the defendant Board of Public Utilities ("BPU"). Plaintiffs suffered physical injury as a result. Defendants now contend that there are no facts present sufficient to support plaintiffs' claims and defendants are therefore entitled to summary judgment as a matter of law. Plaintiffs have requested oral argument in this case. The court has determined that oral argument would not be of material assistance in the determination of this matter. Local Rule 206(d). The court will therefore proceed to dispose of defendants' motion.

The relevant, uncontroverted facts for purposes of this motion are as follows. In 1983, construction on the Central Avenue Bridge in Kansas City, Kansas began. At a pre-bidding conference, Jim Owen ("Owen"), a transmission distribution designer for BPU, advised all potential bidders that the electric lines along the Central Avenue Bridge would remain energized during the construction. A representative of L.G. Barcus, Inc. ("Barcus"), the eventual general contractor on the project, attended that conference. Once Barcus was hired for the job, it employed Structural Steel Contractors, Inc. ("Structural Steel") as a subcontractor on the

Gary W. Collins, Wright & Collins, Kansas City, Mo., Jon S. Willard, Olathe, Kan., for plaintiffs.

project. Plaintiffs in the present case were employees of Structural Steel. Again, after Barcus was successful on its bid, Owen conducted a construction conference with Barcus representatives, to again advise them that the power lines would remain energized during construction. Owen also met on the job site with Barcus job superintendent Ken Russell ("Russell") to point out the specific electric lines that would remain energized. Owen continued to visit the job site to consult with Russell. There is no evidence to show that Owen gave any incorrect information to Russell or to any other representatives of Barcus. Owen was not advised and did not know that subcontractors had been employed to assist in the construction project. The energized lines pointed out by Owen were located further from the bridge deck than required by the National Electric Safety Code ("NESC").

At the time of the accident in question, both plaintiffs had nearly twenty years of experience as ironworkers. There is no evidence to show that any BPU representative ever told either of the plaintiffs that the electric line with which they eventually came into contract was not energized. Although it is unclear what information plaintiffs may have received from representatives of Barcus and/or Structural Steel, plaintiff Richard Kemp ("Kemp") testified that before the accident he presumed that the electrical lines in question were energized. Plaintiff, Darrell Slater ("Slater"), testified in his deposition that he was aware before the accident that energized electrical lines were in the area near where the accident eventually occurred.

Plaintiffs brought this action alleging defendants were negligent in four respects: (1) the electrical line with which they came in contact was too close to the bridge; (2) defendants did not reroute the electrical power throughout the duration of the bridge construction project; (3) defendants did not insulate the electrical line with which plaintiffs came in contact; and (4) defendants did not individually warn plaintiffs that the line in question was energized and did not place any warning signs on the lines in question.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The law governing the duty of care owed by power companies to the public was most recently addressed by the Kansas Supreme Court in *Wilson v. Kansas Power & Light Co.*, 232 Kan. 506, 657 P.2d 546 (1983). The court in that case began with the well-established proposition that providers of electrical energy have a "duty to exercise the highest degree of care to protect the public from danger." *Id.* at 510, 657 P.2d at 549, (quoting *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 695, 339 P.2d 702, 706 (1959)). However, power companies are not insurers against accidents. *Wilson*, 232 Kan. at 510, 657 P.2d

at 550. Maintenance of power lines alone does not constitute negligence. In order to prevail, plaintiff must show an omission of some precaution a reasonable provider of electrical energy would have taken. *Id.* at 512, 657 P.2d at 552.

■ In *Wilson*, the plaintiff was injured on his farm when a piece of irrigation pipe he was handling came into contact with an overhead electrical line. The overhead line in question in *Wilson* was higher than required by the NESC. *Id.* at 509, 657 P.2d at 549. There was no other evidence that a reasonable power company would have placed the lines any higher; thus, no liability was imposed on the defendant power company for allegedly maintaining the lines too close to the ground. *Id.* at 512–14, 657 P.2d at 552. Likewise, in the case at bar, the lines in question were located further from the bridge than required by the NESC, and plaintiff shows the court no other evidence that a reasonable power company in these particular circumstances would have located the lines further from the bridge deck. Since plaintiffs have failed to show the court any evidence which would prove the lines were located too close to the bridge deck, defendants are entitled to summary judgment on this point.

■ Like the plaintiffs in the case at bar, the plaintiff in *Wilson* also argued that the power company was negligent for failing to relocate the electric lines in light of the business operations being conducted in their proximity. However, the court in *Wilson* found that plaintiff had shown no evidence that the location of the lines in question was improper, *id.* at 512, 657 P.2d at 552, and there was no evidence presented that a prudent power company would have relocated the lines in question. *Id.* at 514, 657 P.2d at 552. Likewise, although plaintiffs argue that defendants should have relocated the lines in question, and further show evidence that they may have been able to do so without disconnecting power to a portion of the city, they have shown the court no evidence by way of expert testimony or otherwise which would indicate that a prudent power company would have relocated the lines in question. Plaintiffs bare allegation that defendants "should have relocated these lines," without more, is insufficient to withstand a motion for summary judgment. Therefore, defendants are entitled to summary judgment on this point.

■ Likewise, the court in *Wilson* found there was no evidence to indicate a prudent power company would have insulated the lines in question. *Id.* Plaintiffs argue that the lines in question should have been insulated, but they present no evidence that a reasonable power company would have taken this precaution under these particular circumstances. In the absence of such evidence, the court has no choice but to grant summary judgment on this point in favor of defendants.

■ Finally, plaintiffs argue that defendants were negligent in failing to individually warn the two plaintiffs that the lines were energized. They further contend that defendants should have placed warning signs on or near the lines in question. The plaintiff in *Wilson* propounded a similar argument. The court rejected the contention because there was no evidence to indicate warning signs would have prevented the accident in question. *Id.* at 514, 657 P.2d at 552. The evidence in the case at bar shows that both plaintiffs were aware or at least assumed that the lines in question were energized. An additional warning that the lines were energized would not have been of assistance to one who already knew or assumed that that was the case. Further, there is some uncontroverted evidence to show that if warning signs had been placed on or near the lines in question, the signs would not have been of any assistance to plaintiffs; the only places those signs could have been located would have been out of sight of the plaintiffs' work area. Since there is no evidence that warning signs would have prevented this accident, the court must grant summary judgment in favor of defendants on this point.

The same logic applies to plaintiffs' argument that defendants should have individually warned the plaintiffs in question. Aside from the logistical problem of doing

this on a large construction site, the uncontroverted facts indicate that such a warning would not have prevented the accident in question. Plaintiffs already knew or assumed that the lines were energized. Summary judgment is therefore in order.

As a final note, the court would restate the strong policy considerations set out by the Kansas Supreme Court in *Wilson*. "[T]he transmission of electricity is a necessary fact of life", *Id.* at 513, 657 P.2d at 552, just as farming and bridge construction are essential.

> To hold that usage of the irrigation pipe [or construction of a bridge] alone creates a duty on a power company to raise, bury, relocate or coat its lines would place an unreasonable and unrealistic burden on power companies, ... and would, in essence, elevate the power company to the status of an insurer. This has not been and is not now the law of Kansas.

*Id.* at 514, 657 P.2d at 552.

Since plaintiffs have failed to show the court any evidence which would indicate a reasonable power company would have taken the added precautions they suggest, defendants' motion for summary judgment will be granted.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment is granted.