Delta Electric Power Association *v.* Burton, et al.

No. 41648 January 30, 1961 126 So. 2d 258

*Breland & Whitten,* Sumner; *Bell & McBee,* Green-
wood, for appellant and cross-appellee.

212

*Porter W. Peteet,* Greenwood; *C. Sidney Carlton, R. H. Henderson,* Sumner, for appellees and cross-appellants.

GILLESPIE, J.

Appellees, plaintiffs below, the suriving husband and seven children of Mrs. Nancy Burton, deceased, sued appellant, Delta Electric Power Association, a corpora-

tion organized as a cooperative for the distribution of electricity under Chapter 184, Laws of 1936, and amendatory acts. In general, the action was brought under the wrongful death statute and the negligence charged was that appellant negligently maintained its power lines proximately resulting in the death of Mrs. Burton.

We state the facts in the light most favorable to appellees, for whom the jury found a verdict for $10,000. There is very little conflict in the evidence.

In 1941 appellant constructed electric distribution lines over and across certain lands now known as Lembo Plantation. This was done by permission of the owner, but no written easement was shown. At that time the store and residence hereafter mention had not been built and the lines were properly constructed in a safe manner and in accordance with safety standards of the industry. These power lines ran north and south. In 1948 there was erected a rectangular masonry building, 54 feet north and south by 24 feet east and west, facing south on a local roadway. The southeast corner of this building was 22 feet eight inches west from the perpendicular plane of appellant's power lines, and the northeast corner of the building was 7 feet 10½ inches west of the perpendicular plane of said power lines. Sometime thereafter a shed about 18 feet north and south by 14 feet 8 inches east and west was added to the south end of the east side of the masonry building. The building was used as the headquarters of the Lembo Plantation, and at the time of the accident involved in this case the deceased and her husband and family lived in the rear part and a store was operated in the front, or south, part. Deceased's husband, E. R. Burton, one of the plaintiffs below, and one of the appellees here, was the manager of the plantation beginning September 16, 1956, until Mrs. Burton's death on February 10, 1958.

After construction of the aforesaid shed, which was long before the Burtons moved into the building, the appellant's power lines were on a perpendicular plane

8 feet easterly from the southeast corner of the shed and 2 feet 8 inches from the northeast corner. The power lines consisted of three wires. The top wire was 28 feet 2 inches above the ground and carried 7,620 volts of electricity. Below that was a neutral wire 24 feet 7½ inches above the ground. The bottom, or "take-off", wire was 22 feet 10 inches above the ground and it carried 120 volts.

On September 16, 1956, with the help of some of the farm laborers, Burton erected a television antenna. This antenna was a type that telescoped. The base of the antenna was fastened to the northerly side of the aforesaid shed 2 feet 2½ inches easterly from the masonry building, which placed the antenna 14 feet 6 inches from the perpendicular plane of the power lines. The antenna was 34 feet 6 inches high, or about 6 feet 4 inches taller than the top power line, and nearly 12 feet taller than the lowest of the power lines. The power lines were not insulated. The antenna had near the top two sets of rods which could be turned with a rotator. The rods were 3 or 4 feet long.

In June 1957, a storm blew down the antenna. It fell west away from the power lines and rested on the top of the building. E. R. Burton put it back up with the help of farm labor, but it was slightly bent so that thereafter it could not be telescoped.

On February 10, 1958, the day Mrs. Burton was killed, E. R. Burton decided to lower the antenna and replace a rod that had come loose from the top. The antenna was held by three guy wires fastened to the top of the building. Burton sent his two sons, ages 10 and 15, on top of the building, where each boy unfastened a guy wire and held to it. Burton unfastened the other. The boys held the two guy wires to keep the antenna from falling toward the power lines. Burton attempted to lower the antenna by walking backwards, hands over head, holding the antenna and lowering it. He walked northward about two feet from the easterly wall of the mason-

ry building. When the antenna was at about a sixty degree angle, the bottom began to "kick up" at about the same time that Mrs. Burton came around the house and asked if she could help. Burton told her to hold the base of the tower and she took hold of it. Almost immediately there was a noise of arcing current. Burton, who was wearing rubber boots, was knocked loose from the pole, but Mrs. Burton was fatally shocked and died in about fifteen minutes. Burton was positive the antenna did not touch the power lines but it is evident it got close enough for the current to flow down the antenna.

The record is clear that appellant's employees had seen the antenna and its relation to the power lines during the period from September 16, 1956 to February 10, 1958. One of the employees came to the store residence to restore service after the storm in June 1957 and saw the antenna blown across the house. Meter readers saw the antenna numerous times. So the question of notice to appellant is not a subject of argument.

■■ ■ Mr. Burton knew that electricity would shock but had had little experience with it. He did not know the voltage carried by the power lines and the jury was justified in believing that he did not appreciate the danger. Four-County Electric Power Assn. v. Clardy, 221 Miss. 403, 73 So. 2d 144. It was shown that it was not an uncommon practice in the general area for property owners to raise and lower their own television antennas without the aid of experts.

Both parties introduced qualified experts in the field of electrical engineering who were familiar with the standards of practice in constructing and maintaining electric power lines.

Appellees' expert testified that the standards established for the safe construction of electric power lines are the same as those for the maintenance of such lines, and that a situation which would be regarded as unsafe for construction purposes would be unsafe as a maintenance condition. He further testified that the maintenance of

the electric power lines in question as close as they were to the taller television antenna was unsafe and dangerous; that any contact between the antenna and power lines would conduct a tremendous flow of electricity with attendant danger of fire and shock; that standard practice dictated that the condition existing at the place in question be eliminated in some way. Appellees' chief electrical engineer testified that when conditions are the same, the standards are the same for construction and maintenance. He admitted that the conditions described above were not the best practice and that if he had personally been there prior to the accident he would have recommended that the antenna be relocated. Another electrical engineer testifying for appellant testified that there was no hazard from the position of the power lines and the antenna other than from natural causes. Both of appellant's experts testified that there were three safe ways to lower the antenna, one of which was substantially the same manner employed by Mr. Burton when Mrs. Burton was killed, but that Mr. Burton's attempt to lower it was "extremely unsafe." Their opinion seemed to have been that Mr. Burton did not hold the antenna close enough to the building. It was shown that if Mr. Burton had requested it, appellant would have cut off the current while the antenna was being lowered, but there is nothing to show that Mr. Burton knew this.

██ █ Appellant assigns as error the failure to grant it a peremptory instruction and the overruling of its motion for judgment notwithstanding the verdict. All the assignments of error are to the point that appellant was not guilty of negligence as a matter of law. Appellant's main argument is that it could not have reasonably foreseen the injury.

We held in Four-County Electric Power Assn. v. Clardy, supra, and in a number of other cases, that persons operating electrical systems transmitting deadly currents of electricity are required to exercise the highest degree of care in their construction and maintenance. It is evi-

dent that the same standards apply to construction and maintenance, for power lines are constructed to be maintained and it would be meaningless to require safe construction if not followed by safe maintenance. Of course, if lines safely constructed later become unsafe by reason of something done by another, the operator of the power lines cannot be held liable for injuries growing out of the unsafe condition unless they knew, or in the exercise of reasonable care should have known, of the unsafe condition. But in this case appellant had actual notice over a long period of time of the conditions existing at the Burton residence.

The proof showed almost without any dispute, and the jury was justified in finding, that the maintenance of the power lines in this case was unsafe. In our opinion the jury was fully justified in finding that appellant was charged with foreseeing that some injury would probably result from the maintenance of the power lines as they were maintained in this instance. The rule is well settled that one charged with liability for negligence cannot escape liability because a particular injury could not be foreseen, if some injury ought reasonably to have been anticipated. Cumberland Tel. & Tel. Co. v. Woodam, 99 Miss. 318, 54 So. 890. Cf. Four-County Electric Power Assn. v. Clardy, supra, and Southern Pine Electric Power Assn. v. Denson, 214 Miss. 397, 57 So. 2d 859.

In the *Denson* case, it was held that the power association should have reasonably foreseen some injury would result from the maintenance of power lines over a water well when it was know that patrons of the association would have to work on the well by taking the pipes out, which operation did not require the aid of experts. The same principle applies in this case, for it was known that owners installed and lowered television antennas without the aid of experts. We see no difference in these cases on the question of foreseeability.

Appellants next contend that there was no duty on its part to warn the Burtons because no injury was

likely to happen from the maintenance of the power lines in the condition above described. We think that what has been said disposes of this contention. Appellant's chief engineer testified that if he had been to the Burton home prior to the accident he would have recommended the antenna be relocated. Appellants also say that assuming it was the duty of appellants to move its power lines because Burton erected the antenna so close as to create a hazard, that appellant could have no assurance that it would not be required to remove its lines entirely from the land if another dangerous condition was created by some other structure near the removed line. We do not say that appellant must move its lines. That question is not before the Court. It was the failure of appellant to take any action to eliminate the hazard or give any warning thereof that justified the jury in finding appellant guilty of negligence. If adequate warning had been given to which no attention was paid, we would have another case.

We conclude that the case should be affirmed on direct appeal.

### On Cross-Appeal

 The lower court peremptorily instructed the jury that E. R. Burton was guilty of negligence in removing the antenna. The instruction was as follows:

"The Court charges the jury for the defendant that the plaintiff E. R. Burton, in removing or directing the removal of the tower and antenna in question, was guilty of negligence, and the Court further instructs the jury that if you believe from a preponderance of the evidence in this case that such negligence was the sole proximate cause of the death of Mrs. Burton, then it is your sworn duty to find for the defendant."

Cross-appellants assign as error the granting of this instruction.

Appellant's experts testified that there were three safe ways to lower the antenna, one of which was substan-

tially that employed by Burton, but that Burton's method was unsafe because proper care was not exercised. Burton testified that he was about two feet from the building. Just what or whose action caused the antenna to contact the wires or come so close as to cause electricity to flow down the antenna is not clear to us. That was a question for the jury.

Just as in the *Clardy* case, Burton understood very little about electricity; he knew if there was enough power it would shock, but he did not think there was enough power in the lines to kill one. In the *Clardy* case, the plaintiff was engaged in repairing a well. He was on a derrick extended from a truck and was working within 18 inches to 2 feet of the power lines when in some way electricity entered his body. In that case this Court said:

"The trial court was correct in refusing instructions requested by appellant which told the jury that appellee was negligent as a matter of law. Whether under the circumstances outlined above appellee was contributorily negligent, and, if so, the extent to which it affected appellants' liability were questions for the jury."

In our opinion, the Clardy case was a stronger case than the present one for an instruction that the plaintiff was negligent as a matter of law. We, therefore, hold that the lower court erred in instructing the jury that Burton was guilty of negligence as a matter of law.

 Cross-appellants next complains of the granting to cross-appellee the following instruction:

"The Court charges the jury for the defendant that even if you should find from a preponderance of the evidence in this case that the defendant was guilty of negligence in the maintenance of its power lines which contributed to the death of Nancy Belle Burton, and you must believe that the defendant was guilty of negligence which contributed to the death of Nancy Belle Burton before the plaintiff is entitled to recover anything, then if you further believe from the evidence that Burton or

deceased were guilty of any negligenec which contributed to the accident and death of Nancy Belle Burton, then you will reduce the damages which you would otherwise award the plaintiff in such proportion as the negligence attributable to Burton and deceased bears to the entire negligence involved.''

The suit was brought by E. R. Burton, the surviving husband, and seven children. The part of the instruction objected to by cross appellants is that part requiring the jury to reduce the damages that would otherwise be awarded plaintiff in proportion as the negligence attributable to Burton bears to the entire negligence involved. It is contended that this requires the jury to impute the negligence of E. R. Burton to all the other plaintiffs who were innocent of any contributory negligence. In this cross-appellants are correct despite the fact that the word ''plaintiff'' is used in the singular, a fact that cross-appellee says limits such diminution of damages to E. R. Burton. Only one suit can be brought under the wrongful death statute, Section 1453, Mississippi Code of 1942. No instruction was given the jury as to how a verdict could be returned imputing any contributory negligence of which E. R. Burton might be guilty to him alone. They were instructed to either find for ''plaintiffs'' in one sum, or for the defendant. It seems clear to us that the instruction required the jury to impute to all the plaintiffs any negligence of E. R. Burton. The giving of this instruction was error.

We held in Nosser v. Nosser, 121 Miss. 636, 137 So. 491, that the contributory negligence of one of the beneficiaries under the wrongful death act could not be imputed to other innocent beneficiaries, so as to reduce the damages recoverable from the tort-feasor. The Court there stated: ''It will be observed that the contributory negligence which the statute provides may be taken into consideration by the jury, in a suit for damages for the death of a person injured, is 'that of the person injur-

ed.' " In the *Nosser* case, the Court found it unnecessary to decide whether the contributory negligence of a beneficiary reduces his portion of the amount of damages recoverable that would inure to his benefit. Nor do we do so here, for we do not have before us any instruction which would enable the jury to return a verdict reducing the amount of the recovery inuring to the benefit of E. R. Burton because of his contributory negligence and not imputing such contributory negligence to the other beneficiaries.

We, therefore, affirm the case on direct appeal, and reverse and remand on cross-appeal for a new trial on the issue of damages only.

Affirmed on Direct Appeal; Reversed and remanded on Cross-Appeal.

*Hall, P.J.,* and *Arrington, Ethridge* and *McElroy, JJ.,* concur.

## ON SUGGESTION OF ERROR

McELROY, J.

On suggestion of error and motion to correct judgment the appellants are concerned with the statement in our opinion that meter readers saw the antenna numerous times.

It is not decided by the Court that notice to a meter reader is notice to company of technical defects in maintaining an electrical distribution line unless he is charged with a duty of inspecting and repairing the facilities. The record shows that service men saw the condition which was sufficient to show notice on the part of the company. The statement in the opinion regarding knowledge of the meter readers was a correct statement of fact, but was only one of the circumstances regarding notice of the condition. Whether notice to a meter reader alone is notice to the company would depend upon the particular facts and circumstances of each particular

case. The suggestion of error and motion to correct judgment are overruled.

Suggestion of error and motion to correct judgment overruled.

All Justices concur.