285 So.2d 725 (1973)
MISSISSIPPI POWER & LIGHT COMPANY
v.
Melissa Kaye SHEPARD.
No. 46986.
Supreme Court of Mississippi.
September 24, 1973.
Rehearing Denied December 10, 1973.
*727 Wise, Carter, Child, Steen & Caraway, Green, Cheney, Jones & Hughes, Jackson, Campbell, DeLong, Keady, Robertson & Hagwood, Greenville, for appellant.
Robertshaw, Merideth & Swank, J. Murray Akers, Greenville, for appellee.
RODGERS, Presiding Justice.
This appeal arises out of a wrongful death action brought in the Circuit Court of Washington County, Mississippi. The appellee  Melissa Kaye Shepard, a minor  filed suit through her grandmother and next friend, Mrs. George Atkins, against Mississippi Power & Light Company, in an effort to recover damages resulting from the electrocution of appellee's father, Billy *728 Joe Shepard. After a lengthy trial, the jury returned a verdict in favor of appellee.
On the night of November 13, 1969, Billy Joe Shepard, along with his wife Linda Faye, and his brother, Tommy, endeavored to erect a television antenna at the home of Linda Faye Shepard's mother, Mrs. George Atkins, located at 104 West Goldstein Street in Hollandale, Mississippi. The antenna was fastened to a short metal tube approximately three feet long, connected to a metal telescoping mast. Billy Joe Shepard decided to stretch the antenna mast assembly out in the yard near the site of the proposed erection, with the idea of stepping the mast and antenna into a vertical position next to the west corner of the porch of the Atkins home. Once the thirty-two foot seven inch antenna-mast combination had been walked to an upright position by the two Shepard brothers, Linda Faye was called upon to hold the metal pole at its base while her husband and brother-in-law searched for a means of securing it. Suddenly, the mast began to fall, and Linda Faye cried out for help. The Shepard brothers rushed to her assistance in an effort to arrest the antenna's oblique gravitational descent toward the ground. Yet, just as the young men grabbed the metal pole, the antenna fastened thereto came in contact with appellant's transmission lines, and both brothers were electrocuted.
Billy Joe Shepard was a 27-year-old crew foreman engaged in the maintenance and repair of heavy earth moving equipment. At his death, Billy Joe Shepard was succeeded by his wife, a daughter nearly five years old, and an eight-week-old son. The appellee introduced testimony to show that immediately prior to his death, Billy Joe Shepard had a life expectancy of forty-three years.
Mrs. Atkins' house faced south on Goldstein and was set back from the street and the front lot line by a distance of about twelve feet, with the front porch extending about seven feet further towards the street. Defendant's power lines were originally erected in 1946 and have remained essentially unchanged since that time. The power lines consisted of three primary lines carrying an electromotive force of 13,800 volts, strung in a horizontal plane about 30 to 32 feet above the ground. Below the primary lines were a neutral line and two single-phase household current distribution lines. The secondary or household current wires exhibited a potential difference of about 120 volts to ground and approximately 240 volts between the two energized conductors. All of these wires, both primary and secondary, were uninsulated and otherwise unguarded except as to height above the ground.
The record indicates that prior to the erection of the telescoping mast and antenna on the evening of November 13, 1969, three different television antennas were employed by former residents of 104 West Goldstein street. These antennas were supported by two different structures  at one time a 45-foot crankup steel tower was used, and on another occasion a 34-foot seven-inch creosote utility pole was in use. Expert witnesses testified that any of these structures could have made contact with defendant's power lines had the structures broken at the base, and had they fallen directly towards the power lines.
Of the several alleged errors argued on appeal, the most important so far as this appeal is concerned, and the only that has given this Court considerable concern, is the one in which the appellant alleges that the trial court committed grave error in refusing defendant's motion and requested instruction for a directed verdict in favor of the Mississippi Power and Light Company.
The appellant argued in the trial court, and now argues here, that the plaintiff failed to prove by a preponderance of the testimony that the appellant committed any negligent act or omission which contributed to the injury and death of Billy Joe *729 Shepard; that the negligent acts of Billy Joe Shepard were the sole proximate cause of the accident and his death. This argument is based upon the proposition that the Mississippi Power and Light Company [hereafter referred to as "Power Company"] owed no duty to the public and the deceased which it had not performed. We are, therefore, confronted with the question as to what duty the Power Company owed to the deceased and whether or not this duty had been performed.
It may be safely said as a general proposition that an electric company is under a duty to safeguard the public against injury arising from the use of its dangerous agency, whether the danger arises from its negligence, the negligence of others, or from causes over which it has no control, to the extent of exercising reasonable care to correct or remove the cause of danger if reasonably foreseeable and known to the Power Company. An electric company is not an insurer and is not liable for injuries unless it is guilty of some wrongful act or omission. However, a power company must anticipate and guard against events which may be reasonably expected to occur, and its failure to do so is negligence, even though the power company may not anticipate the identical injury that occurs. 29 C.J.S. Electricity § 38, at 1058-1059 (1965).
The degree of diligence which a distributor of electricity must observe in the distribution of the dangerous agency of electricity is a very high degree of care. When human life is at stake due care under the prevailing circumstances requires that everything that gives reasonable promise of preserving life must be done regardless of difficulty or expense. Moreover, the degree of care increases as the danger increases. 38 Am.Jur. Negligence § 31, at 677 (1941). Just as a railroad may move its trains at a fast rate of speed across meadows and rural farmland where few crossings exist, where people seldom cross the tracks, but is legally required to slow the trains' speed and to anticipate the presence of people, as its trains approach metropolitan areas where there are many street crossings and the population is dense  so, it is the duty of power companies, as their lines emerge from rural areas into a closely built-up habitation where human beings are actively engaged in moving about near and adjacent to the death-dealing power lines located in streets where the citizens have a right to be, to increase their care and vigilance to preserve life and prevent injury.
The degree of care imposed upon the distributors of electricity has been variously expressed as "ordinary or reasonable care under the circumstances", high, very high, highest, very highest, great, very great, greatest, extraordinary, or utmost. For the most part, however, the foregoing statements reflect a mere difference in phraseology. A. Curtis, The Law of Electricity, § 404, at 593-594 (1915).
In a similar fashion, one text writer states:
"§ 42. Standard or degree of care required.

The degree of care required to be used in the production, distribution, and use of electricity is stated in various terms which, perhaps, convey merely one idea. To declare that the utmost care must be used to prevent injury sound different in statement than to say that ordinary care must be used in view of all the circumstances; but when analyzed, the meaning is not far different, for the ordinary care required under the circumstances is, in its practical application and in view of the highly dangerous character of electricity, a relatively high degree of care.
While the measure of duty resting upon electric or telephone companies and others transmitting or using electricity in order to exonerate them from liability for negligence is expressed by the courts in forms varying from reasonable or ordinary care and diligence to a close approximation *730 to the view that they are insurers, or that they owe a high, or the highest or utmost, degree of care, yet the generally accepted rule in such cases, as in determining liability for negligent injuries generally, is that such companies or persons are bound to use reasonable care in the construction and maintenance of their lines and apparatus  that is, such care as a reasonable man would use under the circumstances  and will be responsible for any conduct falling short of this standard. The degree of care which will satisfy this requirement varies, of course, with the danger which will be incurred by negligence and must be commensurate with the danger involved." 26 Am.Jur.2d Electricity, Gas and Steam § 42 at 248-249 (1966).
Since 1907, this Court has imposed "the highest degree of care" on persons and corporations using electricity. Thus, in the landmark case of Temple v. McComb City Electric Light & Power Co., 89 Miss. 1, 42 So. 874 (1907), this Court observed:
"The corporations handling the dangerous agency of electricity are bound, and justly bound, to the very highest measure of skill and care in dealing with these deadly agencies." 89 Miss. at 7, 42 So. at 874.
Following the rule set forth in Temple, supra, Presiding Justice Kyle in Triplett v. American Creosote Works, Incorporated, 251 Miss. 727, 171 So.2d 342 (1965), stated:
"The Power Association was required to exercise the highest degree of care in the construction and maintenance of its high powered lines." 251 Miss. at 737, 171 So.2d at 347.
See also the many cases on this point from this state.[*]
In interpreting the general standard of care imposed upon electric companies as to specific duties, American Jurisprudence, 2d Series, expressed the following standards with regard to the insulation and placement of power lines:
"§ 122. Generally.

As a general rule, electric and telephone companies and others maintaining highly charged electric wires owe the legal duty, irrespective of any contractual relation, toward every person who in the exercise of a lawful occupation or pursuit in a place where he has a legal right to be, whether for business, pleasure, or convenience, may come in contact with the wires, to see that such wires are properly placed with reference to the safety of such persons and are properly *731 insulated. The rule that persons controlling so dangerous and subtle an agency as electricity should not be permitted to theorize in regard to its probable effects, or speculate upon the chances of results affecting human life, is only in accord with reason and common sense. The wires must be either insulated or placed beyond the danger line of contact with persons going where they may reasonably be expected to go. While the maintenance of electric wires should not be burdened with excessive liabilities, still it is clear that a company maintaining dangerous wires should not be relieved on the ground of expense from the affirmative duty of exercising a reasonable degree of care to maintain proper insulation and thereby prevent accidents reasonably to be apprehended to those lawfully coming in the neighborhood of such wires. Indeed, in view of the danger to human life from the maintenance of uninsulated electric lines in a growing business section, the factor of the expense of insulating the lines deserves little consideration in determining negligence of an electric company. Moreover, the fact that a particular voltage is not regarded as highly dangerous does not alone relieve an electric company of its duty to insulate such wire. However, as indicated in the statement of the general rule above, the duty of insulating wires is not absolute; it is limited to places where persons may reasonably be expected to go, and does not apply in a case where a consumer wrongfully makes connections with the wires and is injured, as a result, by the electricity escaping from the appliance so installed.
Although insulation may not always be possible, this fact does not relieve a company transmitting electricity of its alternative duty to put and keep the wires in such a place or at such a height that a person using due care and caution for his own safety, and in the exercise of his rights and privileges in a place where he may reasonably be expected to go, will not be injured thereby, which duty in itself, if performed, constitutes a fulfilment of the obligation imposed by law. Where an electric company maintains its wires at a height at which they would not come into dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because someone doing an act which it has no reason to expect suffers an injury which might not have been sustained if the wires had been higher or had been safeguarded in a different manner." (Emphasis added) 26 Am.Jur.2d Electricity, Gas and Steam § 122, at 332-334 (1966).
Along these same lines, another text writer states:
"The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places wherever injury to anyone ought reasonably to be anticipated, or at places where high voltage wires cross or are likely to come into contact with other wires and other objects which may transmit the current to points and places at which it may be reasonably apprehended that persons may come into contact with the current." 29 C.J.S. Electricity § 44, at 1086-1087 (1965).
The following specific cases will emphasize the degree of care required of electric power distributors.
In Mississippi Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963), a truck driver filed suit against Mississippi Power & Light Company for injuries he received while operating an "A-frame" truck equipped with gin poles and metal cable in close proximity to an overhead uninsulated power line. At the time of the accident, the plaintiff was removing drilling equipment from a well *732 site. In affirming with a remittitur the judgment against the power company, Judge Kyle quoted from Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75 (1952) as follows:
"Electricity is a highly dangerous agency, and it must be denominated negligence to erect so close to the well a high voltage line, unless insulated, or unless, in the exercise of the highest degree of care, it was strung high enough off of the ground reasonably to prevent injury to him." 248 Miss. at 250, 158 So.2d at 19.
See also Mississippi Power Co. v. Thomas, 162 Miss. 734, 140 So. 227 (1932).
Judge McElroy, speaking on behalf of this Court in Mississippi Power Company v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963) set forth the following standards for the placement of high tension transmission wires:
"The condition upon which a public utility company may string and maintain its wires over and across streets and highways is that these wires must be so placed as not to be dangerous to persons and property; and it is the continuing duty of the utility to maintain its wires over the streets and highways in such a manner that they will not become dangerous to persons and property. While this duty is not absolute in that the utility is an insurer against all injuries and all events, it is true that the rule, because it concerns the dangerous agency of electricity, is not satisfied to relieve the utility from liability unless and until it is shown that the company has exercised the highest degree of care to prevent the danger." 247 Miss. at 411-412, 152 So.2d at 897.
And, in Grice v. Central Electric Power Association, 230 Miss. 437, 92 So.2d 837, 96 So.2d 909 (1957) this Court held:
"... [T]hose handling the dangerous agency of electricity should exercise the highest degree of care to keep their high voltage wires a sufficient distance from `men at work' that no contact therewith will probably be made in the usual course of events." 230 Miss. at 455, 92 So.2d at 841.
cf. Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267 (Miss. 1970).
The California Court of Appeals in Ruth v. Pacific Gas and Electric Company, 23 Cal. App.3d 806, 100 Cal. Rptr. 501 (1972) set forth the following criteria for the insulation and placement of power lines:
"While an electric company is not under an absolute duty to insulate or make the wires safe in any particular manner, it does have a duty to make the wires safe under all the exigencies created by the surrounding circumstances (Lozano v. Pacific Gas & Elec. Co. (1945) 70 Cal. App.2d 415, 422, 161 P.2d 74). The duty of an electric company is alternative, i.e., either to insulate the wires or to so locate them to make them comparatively harmless.
* * * * * *
The duty of insulation would arise only if the company had failed to make its wires safe through other means available, e.g., placement at a greater height, and only if, due to such neglect, a probability of injury from contact with the wires thereby existed... ." 100 Cal. Rptr. at 507.
Similarly, in Henderson v. Kansas Power & Light Company, 184 Kan. 691, 339 P.2d 702 (1959), the Supreme Court of Kansas held:
"Courts generally, if not universally, hold that the duty to exercise the highest degree of care in the maintenance of high-voltage power lines over private property or streets and highways requires the power company to insulate its wires carefully and properly at all places where others have the right to go, either for work, pleasure or business, or where there is a reasonable probability of contact *733 with them, but the duty to insulate is not absolute and if the company maintains its wires at such height above ground that there is no reason to anticipate that contact will be made with such wires, then insulation is not required. The wires must be either insulated or placed beyond the danger line of contact at places where contact is reasonably to be anticipated. 18 Am.Jur., Electricity, §§ 93, 96, pp. 485-487, 490-491; 29 C.J.S. Electricity § 44, pp. 589-591; Annotations 14 A.L.R. 1023, 1024-1030, and 56 A.L.R. 1021-1025." 339 P.2d at 708.
See also Virginia Electric and Power Company v. McCleese, 206 Va. 127, 141 S.E.2d 755 (1965); Smith v. Virginia Electric and Power Company, 204 Va. 128, 129 S.E.2d 655 (1963).
It is apparent that the various duties imposed upon a power company transmitting high voltage electricity are intimately related to the concept of foreseeability. In American Jurisprudence, 2d Series, the rule of law with respect to a power company's duty to anticipate harm to others is expressed as follows:
"§ 43.  Foreseeability or anticipation of harm or injury.

It has been said that the care required of electric power companies is more than mere mechanical skill; it includes foresight with regard to reasonably probable contingencies. In other words, such companies or others transmitting or using electricity are required to guard against events or contingencies which can be reasonably foreseen or anticipated. Moreover, it is not necessary that the precise injury should have been anticipated, so long as the probability of injury to someone who had a right to be in the vicinity might have been reasonably anticipated.
Conversely, the law is complied with when an electric or telephone company or others engaged in the transmission or use of electricity provide such a protection as will safely guard against any contingency that is reasonably to be anticipated. The extent of the duty or standard of care is measured in the terms of foreseeability of injury from the situation created. There is no duty to safeguard against occurrences that cannot be reasonably expected or contemplated. A failure to anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances is not negligence, nor does the law require those maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those lines.
The factor of foreseeability also enters into the question of proximate cause, which is subsequently discussed. Assuming that one engaged in the transmission or use of electricity has been negligent, such negligence cannot be said to be the proximate cause of the injury unless, under all the circumstances, the injury might have been reasonably foreseen." 26 Am.Jur.2d Electricity, Gas and Steam § 43, at 252-253 (1966).
See also Annot., 69 A.L.R.2d 9, at 19-39 (1960).
In the early case of Temple v. McComb City Electric Light & Power Co., 89 Miss. 1, 42 So. 874 (1907), a ten-year-old boy was injured when he came in contact with an uninsulated power line while climbing in an oak tree. The Court took special note of the fact that the power line was strung through a tree of a type that "... small boys of any community would be attracted to, and use, in their play." 89 Miss. at 7, 42 So. at 875. In the following words, this Court, in an opinion written by Chief Justice Whitfield, held that the power company was bound to anticipate the consequences of the placement of their lines:
"It is perfectly idle for the appellee to insist that it was not bound to have reasonably expected the small boys of the *734 neighborhood to climb that sort of tree. The fact that such boy would, in all probability, climb that particular tree, being the kind of tree it was, was a fact which, according to every sound principle of law and common sense, this corporation must have anticipated. The argument that it did not almost suggests the query whether the individuals composing this corporation, its employes and agents, had forgotten that they were once small boys themselves. The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of. This court, so far as the exertion of its power in a legitimate way is concerned, intends to exert that power so as to secure, at the hands of these public utility corporations, handling and controlling these extraordinarily dangerous agencies, the very highest degree of skill and care." 89 Miss. at 8, 42 So. at 875.
Laurel Light & Ry. Co. v. Jones, 137 Miss. 143, 102 So. 1 (1924) involved a factual situation closely analogous to the tree climbing situation expressed in Temple, supra. In affirming a judgment in favor of the plaintiff, this Court held:
"... [W]e think that the defendant could have anticipated that an injury would have occurred from such exposed wire carrying a large voltage of electricity passing through trees near the playground of the school building. It is not necessary that the particular injury should be anticipated, but that some injury would reasonably be anticipated, and, if the negligence of the defendant was a continuing and contributing cause of the injury, the defendant is liable." 137 Miss. at 157-158, 102 So. at 3.
In Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75 (1952), plaintiff's deceased was removing a section of well pipe 21 feet in length and a strainer five feet in length (total  26 feet in length) from his well when the top section of the well pipe came into contact with defendant's 7,620 volt primary transmission line strung almost directly over the well at a height of approximately 25 feet above ground level. In affirming a verdict in favor of the plaintiff, the Court noted:
"A fair statement of the rule as regards liability of power companies in the erection and maintenance of their wires is stated in 18 Am.Jur., Electricity, par. 53, pages 448-9, to wit: `* * * they are bound to anticipate only such combinations or circumstances and accidents and injuries therefrom as they may reasonably forecast as likely to happen, taking into account their own past experience and the experience and practice of others in similar situations, together with what is inherently probable from the condition of their appliances as they relate to the conduct of their business.' (Emphasis supplied.)
When it is known that a large majority of appellant's patrons install pumps in their wells; that the depth of wells in that area is greater than 20 feet; that pipes for such pumps come in standard lengths of 21 feet; that, after installation, pumps get out of order and must be repaired, and to that end, must be pulled out of the wells; that it does not require the services of experts, but patrons themselves remove such pipes; that in installing and removing such pumps from the wells, the pipe is likely to extend 25 or more feet into the air  under such circumstances, should the appellant, at the time of constructing its power line almost directly over this particular well, have reasonably foreseen that Stringer would do necessary work in and about his well, which would expose him to danger from its line, if it was only 25 feet above the ground?" 214 Miss. at 410, 57 So.2d at 862.
*735 This Court answered the above issue of foreseeability in the affirmative when it held:
"Electricity is a highly dangerous agency, and it must be denominated negligence to erect so close to the well a high voltage line, unless insulated, or unless, in the exercise of the highest degree of care, it was strong high enough off of the ground reasonably to prevent injury to him." 214 Miss. at 410, 57 So.2d at 862.
In a nearly identical well accident, this Court again declared:
"Appellant should have reasonably anticipated that someone working on or about the well in repairing it would likely come in contact with appellant's transmission line." 4-County Electric Power Ass'n v. Clardy, 221 Miss. 403, 424, 73 So.2d 144, 148 (1954).
The Galloway v. Singing River Electric Power Ass'n Inc. case, 247 Miss. 308, 152 So.2d 710 (1963) resembles the instant case in many noteworthy respects. In Galloway, the plaintiff was lowering his 27 1/2 ft. high television antenna after dark when it came in contact with defendant's 7,620 volt uninsulated primary line maintained at a height of 23 feet, five inches from the ground. The transmission line was routed upon the power company's easement running 11.5 feet from the northeast corner and 17.1 feet from the northwest corner of plaintiff's house. The Supreme Court reversed the decision of the circuit court in granting a peremptory instruction for the plaintiff, and took cognizance of the fact that television antennas and tall masts are commonplace in many areas of this state. In finding that the issue of foreseeability was a jury issue, the Court held:
"Appellee was required to exercise the highest degree of care in the maintenance of the power lines. It is common knowledge that in most, if not all, parts of Mississippi not within the immediate area of a television station, practically all houses contain televisions, even the humblest. In these areas the antennas extend to considerable heights. The jury would be justified in finding that in the exercise of the proper degree of care appellee should have known of the proximity of Stringfellow's television antenna to its power lines. We hold that the question of notice was for determination of the jury." 247 Miss. at 313-314, 152 So.2d at 712.
* * * * * *
"Considering the highly dangerous nature of electricity, we hold that the jury would be justified in finding that appellee should have anticipated some injury from the maintenance of the power lines in such relation to the antenna." 247 Miss. at 314, 152 So.2d at 713.
See also Mississippi Power & Light Company v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963).
In Henderson v. Kansas Power & Light Company, 184 Kan. 691, 339 P.2d 702 (1959) the Supreme Court of Kansas imposed a strict duty of foreseeability on the power company. In reversing a judgment in favor of the power company, the Court held that the erection of a television antenna was a reasonable and foreseeable use of his property by the plaintiff. The Court said:
"Defendant contends it could not reasonably foresee or anticipate that a television antenna would be installed in close proximity to its power line, which would be of such height as to come into contact with its power line and therefore it was not guilty of any negligence as a matter of law. We do not agree. The test of negligence or the absence of negligence on the part of the defendant was not whether it should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable thing that might be done upon Voigt's property by people who had a right to go there, *736 either for work, pleasure or business (Worley v. Kansas Electric Power Co., supra; [138 Kan. 69, 23 P.2d 494] Wamsley, v. Rural Telephone Association, 102 Kan. 139, 143, 169 P. 197). Certainly, the erection of an antenna was a reasonable use of the property and the owner or his tenant had a right to the use of the property up to the boundary line." (Brackets added) 339 P.2d at 709-710.
The appellant argues, however, that since it constructed its power line along the north side of West Goldstein Street in Hollandale, Mississippi, in 1946, in compliance with the National Electric Safety Code, and since the power line has remained essentially the same since that time, and since it had no way of knowing that the deceased would attempt to put up a metal television antenna adjacent to its power line, it could not have foreseen the likelihood of such an unusual accident, because there was no antenna conflict within the meaning of the National Electric Safety Code. It is argued that there is no evidence of any specific "hazardous" condition or violation of the National Electric Safety Code in relation to the defendant's facilities at or near West Goldstein Street on the date of the accident.
The appellee replies, however, that in 1946, television antennas were not in general use, but that since the power line was constructed in Hollandale, practically every home has a television antenna attached to the house. It is also pointed out that at the house where the accident occurred, there had previously been a tall television antenna on a pole near the house. Moreover, it is said that a television antenna had previously fallen on appellant's lines from a house next door. It is further argued that although the appellant had inspected the lines at the point of the accident, there was no memoranda that there was an antenna conflict at the residence at 104 West Goldstein in Hollandale, and the defendant had made no effort to warn the occupants or to guard against the danger to the occupants; nor had it insulated the lines, nor isolated them, nor placed any guards on the wires to protect the public.
It is then argued that the issue as to whether or not the appellant had performed its duty to isolate the wires, or to insulate them, or guard them, was a jury question; that it was also a jury question as to whether or not the appellant warned the occupants of the house here involved, or posted signs warning the general public. On the other hand, appellant contends that the deceased worked near the house on West Goldstein Street and must have been familiar with the high power lines running along the street. It is said that since there was no evidence of a hazardous condition or violation of the National Electric Safety Code by the appellant along West Goldstein Street and there was no foreseeable accident that should have been anticipated, appellant was entitled to a directed verdict.
At the outset in considering this argument, it must be pointed out that in Galloway v. Singing River Electric Power Ass'n, Inc., 247 Miss. 308, 152 So.2d 710 (1963) this Court held:
"The National Electric Safety Code contains minimum requirements and constitutes guiding principles in the construction and maintenance of electric power lines. It is not conclusive on the question of due care by the utility. Compliance with the safety code is a relevant fact on the question of due care. If appellee had failed to comply with the minimum requirements of the National Electric Safety Code it would probably be chargeable with negligence per se, and compliance relieves the utility of that charge. We hold that compliance with the minimum standards contained in the National Electric Safety Code is not conclusive on the question of due care when the particular circumstances justify a finding of lack of due care. Elliott v. Black River Electric Cooperative, 233 S.C. 233, 104 S.E.2d 357, 74 A.L.R.2d 907; Anno. 69 A.L.R. 127, et seq. *737 Whether a utility is negligent despite compliance with the Safety Code is ordinarily a question for the jury. Johnson v. Monongahela Power Co. (146 W. Va. 900), 123 S.E.2d 81." 247 Miss. at 312-313, 152 So.2d at 712.
See also Mississippi Power & Light Company v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963).
The general rule has been stated by one text writer to be as follows:
"The extent to which wires conveying deadly electric currents should be insulated or otherwise guarded must be decided by the jury under the facts of the particular case where the evidence in such respect is susceptible of different reasonable inferences." 26 Am.Jur.2d Electricity, Gas and Steam § 122, at 335 (1966).
As recently as 1972, in Butler v. Chrestman, 264 So.2d 812 (Miss. 1972), this Court reannounced the time-honored standard with respect to the circumstances under which it is proper to grant a directed verdict or peremptory instruction. Justice Patterson quoted as follows from Mock v. Natchez Garden Club, 230 Miss. 377, 382, 92 So.2d 562, 563 (1957):
"`[T]hat if reasonable men might have a difference of opinion as to whether or not the negligence of the actor constituted a substantial factor in bringing about the injury, then the question is for the jury. We have also held repeatedly in cases too numerous to mention that upon a motion for a directed verdict all the facts expressly testified to, and all inferences necessarily and logically to be deduced therefrom, are to be taken as true in favor of the party against whom the motion is asked, and that a case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts which the evidence tends to establish, and further that if more than one reasonable inference can be drawn from the facts the question of negligence is for the jury."
See also Ezell v. Metropolitan Ins. Co., 228 So.2d 890 (Miss. 1969); New Orleans & Northeastern RR Co. v. Weary, 217 So.2d 274 (Miss. 1968); and First Nat'l Bk. of Vicksburg v. Cutrer, 214 So.2d 465 (Miss. 1968)." 264 So.2d at 815.
The following cases are also in point on this subject: Jones v. Phillips, 263 So.2d 759 (Miss. 1972); Genna v. Harrington, 254 So.2d 525 (Miss. 1971); Ezell v. Metropolitan Insurance Company, 228 So.2d 890 (Miss. 1969); Berry v. Brunt, 252 Miss. 194, 172 So.2d 398 (1965); Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So.2d 226 (1962).
Annot., 69 A.L.R.2d 9 (1960) contains the following general rule regarding the submission of the question of a power company's negligence to the jury:
"An electric power company is clearly liable in damages for an injury proximately resulting from its failure to exercise the proper degree of care, to one to whom it owes the duty of such care. The question of negligence is one for the jury to decide from the facts of each particular case, except where reasonable men may not fairly differ in their conclusions from the facts, and in determining the question of the degree of care to be exercised, it is proper for the jury to take into consideration the location of the lines, whether in thickly or sparsely settled communities, the use to which they are to be put, their remoteness or proximity to travelers on the highway, the harmless or dangerous character of the current to be transmitted, and any other circumstances affecting the case. No liability to respond in damages will attach in the absence of negligence on the part of the company or its employees proximately causing the injury complained *738 of." Annot., 69 A.L.R.2d at 15-16.
American Jurisprudence 2d contains a similar statement of the law:
"... [W]here there is a conflict of the evidence or inferences therefrom as to the ownership or control of electric lines, the dangerous character of particular wires, or as to what constitutes such ordinary travel on a highway as should be reasonably anticipated by a company maintaining wires thereon, the question is one of fact for the jury." 26 Am.Jur.2d Electricity, Gas and Steam § 191, at 403 (1966).
And, this rule is also stated in C.J.S. as follows:
"In accordance with the usual rules in civil actions, if there is any evidence sufficient to take the case to the jury on a question of fact, relating to injuries incident to the production, transmission, and use of electricity, and the evidence is conflicting or is of such a doubtful character that reasonable men might draw different inferences therefrom, the question should be submitted to the jury for determination; and in such a case the court may properly refuse, or it is error for it, to take the question from the jury, as by a nonsuit, dismissal, direction of a verdict, or a peremptory instruction. On the other hand, if there is no evidence on an issue of fact, or the evidence thereon is legally insufficient to be submitted to the jury or is such that but one inference can reasonably be drawn therefrom, the question becomes one of law for the court of itself to determine, and it may dispose of the issue by a dismissal or nonsuit by sustaining a demurrer to the evidence, or by the direction of a verdict, as may be appropriate in the particular case, and it is error to submit the issue to the jury." 29 C.J.S. Electricity § 70a at 1168-1169 (1965).
In Delta Electric Power Association v. Burton, 240 Miss. 209, 126 So.2d 258, 866 (1961), a woman was electrocuted while helping her husband to lower a 34-foot six-inch television antenna. The antenna was located next to a shed on the plaintiff's property. Defendant's power line was also on plaintiff's property at a lateral distance of 14 feet six inches from the antenna and at a height of 28 feet two inches above the ground. The plaintiff presented expert testimony to show that the transmission line was maintained in dangerously close proximity to the antenna. There was also some testimony that plaintiff's method for lowering the antenna was essentially a safe and reasonable technique, although the defendant presented a witness to contradict this view. In rejecting appellant's contention that the trial court erred in refusing to grant his peremptory instruction, this Court held:
"The proof showed almost without any dispute, and the jury was justified in finding, that the maintenance of the power lines in this case was unsafe. In our opinion the jury was fully justified in finding that appellant was charged with foreseeing that some injury would probably result from the maintenance of the power lines as they were maintained in this instance. The rule is well settled that one charged with liability for negligence cannot escape liability because a particular injury could not be foreseen, if some injury ought reasonably to have been anticipated. Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 54 So. 890. Cf. Four-County Electric Power Ass'n v. Clardy, supra, and Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75." 240 Miss. at 219, 126 So.2d at 261.
See also Mississippi Power & Light Co. v. Griffin, 81 F.2d 292 (5 Cir.1936); Whitescarver v. Mississippi Power & Light Co., 5 F. Supp. 948 (D.C.Miss. 1932) aff. 68 F.2d 928 (5th Cir.1934); Holcomb v. Singing River Electric Power Association, 231 So.2d 192 (Miss. 1970); Mississippi Power & Light Company v. Walters, 248 *739 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963); Grice v. Central Electric Power Association, 230 Miss. 437, 92 So.2d 837, 96 So.2d 909 (1957); Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75 (1952).
In Henderson v. Kansas Power & Light Company, 184 Kan. 691, 339 P.2d 702 (1959), plaintiff was injured when electricity from defendant's high voltage line jumped into the mast portion of a television antenna while the plaintiff was assisting in turning it on the property of another. The plaintiff introduced evidence to show that defendant's 33,000 volt transmission line was maintained at a height of 39.8 feet above the ground at the point of contract or a distance of 16.1 feet above the highest part of plaintiff's roof. (Defendant's power lien encroached on plaintiff's property by a distance of 1.2 feet). The full height of plaintiff's antenna was 39 feet 8 inches above the ground. The testimony indicated that the antenna pole was not leaning in any direction, and the guy wires were not loose. When the plaintiff and his companions walked up and took hold of the antenna pole to rotate the antenna into a different position, "there was a terrific explosion", and the plaintiff was knocked unconscious. Plaintiff's expert witness testified that the defendant power company could have used a different arrangement of cross arms in order to keep the electric wires from being over the plaintiff's property. In answer to a hypothetical question, plaintiff's expert testified that in his opinion, the current that caused the explosion and electrical shock to the plaintiff could have come only from the defendant's 33,000 volt power line. In determining whether or not enough evidence was presented to create a jury question on defendant's negligence, the Kansas court stated:
"... [T]he question must be submitted to the jury if the facts of record are such that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon, and, further, the question whether a negligent act is the proximate cause of an injury, and whether an ordinarily reasonable, prudent man would have foreseen that injury might have occurred as a result of the negligent act, is also a question of fact for the jury (Mehl v. Carter, 171 Kan. 597, 237 P.2d 240; Emmerich v. Kansas City Public Service Co., 177 Kan. 443, 450, 280 P.2d 615; Bishop v. Huffman, 177 Kan. 256, 278 P.2d 588). See, also, 4 Hatcher's Kansas Digest (Rev.Ed.), Negligence, §§ 74, 75." 339 P.2d at 705-706.
Applying the foregoing rule, the court reached the following conclusion:
"In view of the foregoing, we are of the opinion the facts here presented are such that the question as to whether defendant was negligent in failing to insulate its wires or maintain them at a height so as to prevent contact therewith by an antenna mast, was one upon which reasonable minds could differ and was therefore a question of fact for the jury." 339 P.2d at 709.
After having reviewed the authorities, we have reached the conclusion that the question as to whether or not the defendant power company should have anticipated that persons using due regard for their own safety in constructing, erecting and using television antennas in the congested area of Hollandale would likely come into contact with its dangerous power lines so that it was the Power Company's duty to isolate, insulate or guard its lines against the likelihood of such contact with its lines by the lawful use of the inhabitants, and the issue as to the necessity of a warning and whether or not the Power Company failed to perform its duty in this regard were questions of fact for the jury. We hold that the court properly submitted these issues to the jury for its determination.
Having answered the primary issue as to whether or not the facts in this case present a jury issue, we now move to the *740 assignments of error alleging procedural mistakes made in the progress of the trial. Inasmuch as we have decided that the case must be reversed for a new trial we notice only the alleged errors necessary in order to furnish a guide to be followed in a retrial of the case.
The appellant contends that the trial court committed reversible error in permitting the appellee to introduce a witness, Mrs. M.C. Johnson. Her testimony was to the effect that she lived near to the house where the deceased later attempted to erect the television antenna; that one cold night in 1963 her lights went off and she observed the electric light workers as they removed a television antenna belonging to a neighbor from the electric lines here involved, near the place where the accident occurred in the instant case.
The appellant bases its argument upon the propositions that the incident was too remote [six years removed from the accident involved], and the previous accident was caused by an ice storm and was not similar to the situation here involved.
The appellee contends, however, that the testimony of the witness shows actual knowledge of the appellant that television antennas were adjacent to its lines and that they could fall and did fall upon the power line here involved. They also point out that the appellant admits that there had been no change in the line since it was erected, and thus it is argued that the former incident could not be too remote.
The appellant has cited S.H. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858 (1918) wherein this Court held that where an unguarded elevator shaft had been habitually left open two years, the employer had notice of the negligence, and that testimony of other near accidents at the same place under practically similar conditions was admissible to show the dangerous character or nature of the place. Appellant cites other authorities, but we are of the opinion that the testimony in the instant case was admissible to show that the television antennas constructed since the power line was installed along the edge of the street, were likely to fall on the line and would cause damage unless the power line was properly isolated, insulated or guarded so as to prevent injury upon contact with television antennas along the streets where the appellant is licensed to operate in the Town of Hollandale. See 29 Am.Jur.2d Evidence § 307, at 353-354 nn. 9 & 10 (1967).
Moreover, it is largely within the sound judicial discretion of the trial judge as to whether or not such testimony is material and meets the test of substantial similarity of conditions to the issue. Hartford Insurance Group v. Massey, 216 So.2d 415 (Miss. 1968).
Inasmuch as the testimony of Mrs. M.C. Johnson was admissible, the appellee's attorney had a right to mention it in his preliminary statement to the jury. See Section 1526, Mississippi Code 1942 Annotated (1956).
The objections made to the testimony of C.E. Jones, Bethel Ferguson and Stewart Frame with reference to the previous safety program inaugurated by the appellant was properly overruled as to parts of the testimony of the named witnesses, [assuming they were properly called as adverse witnesses]. The evidence was competent for the purpose of showing knowledge of the growing danger in closely built-up housing areas because of the use of television antennas. The testimony as to what steps had been taken to protect the public was also admissible. On the other hand, testimony as to what other companies were doing, and how claims were settled, and the activity of claim agents, was incompetent and should not be repeated upon retrial.
The Power Company complains that the court erroneously refused an instruction requested by it on the assumption *741 of risk theory, wherein the court was asked to tell the jury that if the deceased had knowledge of the power line and appreciated the danger and had a choice of waiting until daylight to erect the television antenna, but did not do so, he assumed the risk of being electrocuted by contact with the power line. This instruction was properly refused for several reasons. First, even if the deceased was negligent in constructing a television antenna in the nighttime, adjacent to a dangerous high power electric line, his negligence would not have barred his suit, unless it had been shown that the deceased voluntarily and intentionally brought the metal television antenna near the electric power lines with full knowledge of where they were and their potential danger. The legal concept of assumption of risk as a defense in a tort action rarely exists. The instruction did not take into consideration the fact that the deceased rushed to the aid of his wife in an emergency situation at a time when she was trying to prevent the television antenna from falling.
We hold that the facts in the present case are not sufficient so as to bring this case within the assumption of risk doctrine. See Shurley v. Hoskins, 271 So.2d 439 (Miss. 1973); White v. Mississippi Power & Light Company, 196 So.2d 343 (Miss. 1967); Mississippi Power & Light Company v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963); Wallace v. J.C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876 (1959).
Although we are not entirely in accord, a majority of the members of this Court after mature consideration, have reached the conclusion that the trial court should have instructed the jury that the deceased Billy Joe Shepard, was guilty of negligence as a matter of law, and that his negligence was a contributing cause of the accident. We are like the trial court in that we think it is a close question, but we hold that upon retrial, this instruction, if requested, should be granted under the facts in this case.
Defendant's Instruction No. 20B to the effect that the deceased was presumed to have seen the electric power line and to have known of its presence, was properly refused. There is no presumption to that effect, this is an assumption of fact. Moreover, the instruction is an attempt to instruct on the weight and worth of the evidence by adding an inference in violation of Section 1530, Mississippi Code 1942 Annotated (1956).
Plaintiff's Instruction No. 6 is erroneous. It requires the Power Company to maintain its lines in such a manner as to prevent it from being dangerous to the public. This is not the rule. Although the Power Company is required to do all things necessary in maintaining its lines as a reasonable person would do under like circumstances for the protection of the public, it is not required to maintain its lines in such a perfect condition as to prevent any and all accidents. If it were required so to do, the Power Company would be an insurer against all injury to persons and property. The instruction should be rewritten so as to eliminate this falacy and so as not to assume as a fact that the lines were not isolated nor insulated. Reference to the pole being out of plumb should also be deleted, because there is not enough testimony to indicate that this contributed to the cause of the injury. The pole's being out of plumb was apparently admitted by the court to show the lack of continued maintenance of the power lines.
The argument that this particular accident was unforeseeable has been discussed under the motion for a directed verdict. We pause here, however, to point out that in this modern time when highways are being rebuilt at great cost, so as to go around congested areas in order to prevent accidents that are likely to occur, the argument that a reasonable, prudent person cannot foresee accidents when uninsulated high-powered lines pass through a forest of television antennas, begins to become pale in logic.
*742 During the trial, the plaintiff called Dr. Donald R. Wells, Professor of Economics at Memphis State University, who was qualified as an expert in the field of economics. Over the objection of the Power Company, Dr. Wells testified as to the reasonable economic probability of a white male born August 29, 1942, who had a seventh grade education, similarly situated as was the deceased, and stated that he would be earning $34,000 per year after 38 years at the same job.
We have reviewed this evidence carefully, and we have reached the conclusion that this testimony was too speculative to be of any real value to the jury in making up a true verdict. Although this kind of testimony has been condemned by a great many opinions, [see the cases set out in 2 F. Harper & F. James, The Law of Torts § 25.11, at 1325, 1326 (1956)] nevertheless, we can anticipate that there may be cases where the testimony of an economist could be admissible. We do not believe this is such a case.
We held in Kinnard v. Martin, 223 So.2d 300 (Miss. 1969) that the jury had the right to consider any changes in the purchase power of money, and so it has, but this does not mean that one may prophesy the future as a matter of evidence.
We are of the opinion and so hold that the instant case must be reversed and remanded for a new trial to accord with the foregoing opinion.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, SUGG, WALKER and BROOM, JJ., concur.
INZER, Justice (dissenting):
With due deference I am compelled to dissent from that part of the majority opinion which holds that appellant was not entitled to a peremptory instruction in its favor. It is my opinion to hold appellant liable under the facts and circumstances of this case simply makes it an insurer and requires it to foresee any possibility of injury that may result from the maintenance of its power lines.
Appellee admits that an inquiry into appellant's negligence, if any, must begin with the issue of foreseeability. The rule to be followed in determining foreseeability is announced and discussed in Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So.2d 249, 9 So.2d 780 (1942), wherein it is stated:
The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, D'Antoni v. Albritton, 156 Miss. 758, 766, 126 So. 836; Williams v. Lumpkin, 169 Miss. 146, 152, 152 So. 842; but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. Illinois Cent. R. Co. v. Bloodworth, 166 Miss. 602, 617, 145 So. 333; Burnside v. Gulf Refining Co., 166 Miss. 460, 470, 148 So. 219; Shuptrine v. Herron, 182 Miss. 315, 180 So. 620. This rule is affirmed in one way or another in cases which will run into the hundreds in this state. (Emphasis added). (193 Miss. at 427, 428, 9 So.2d at 781, 782).
The Court pointed out the difficulty is not the rule, but applying it to the facts of a particular case. The rule is to be applied from the vantage point of looking forward in all directions, not at what has happened, but what is likely to happen. The Court then states:
In such a situation, as indeed in most situations, the principles of the common *743 law must be kept within practicable bounds and so as not to occupy an attitude which would place it over and above the heads of those who must carry on the every day affairs of life. Hence, the law must say, as it does, that "care or foresight as to the probable effect of an act is not to be weighed on jewelers' scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations," Illinois Cent. R. Co., v. Bloodworth, supra, 166 Miss., page 618, 145 So., page 336; and that it would impose too heavy a responsibility for negligence to hold the tort feasor accountable for what was unusual and unlikely to happen, or for what was only remotely and slightly probable. 38 Am.Jur., p. 713, Sec. 61. As said by this court in Meridian Grain, etc., Co., v. Jones, 176 Miss. 764, 776, 169 So. 771, 772, quoting Pollock on Torts (9 Ed.), p. 41: "A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjective be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. (193 Miss. at 429, 430, 9 So.2d at 781)
While the case before us deals with electricity, a highly dangerous medium, we stated in Roberts v. Mississippi Power & Light Co., 193 Miss. 627, 10 So.2d 542 (1942), that:
The appeal presents the legal question whether, conceding the facts to be as outlined by plaintiff's case, the defendants could be held to have violated a legal duty owing to deceased. Although the degree of care has been often said to vary with the degree of danger inherent in an instrumentality, a comprehensive definition of requisite care is "that degree of care commensurate with appreciable danger appraised in terms of ordinary prudence and interpreted in the light of the attendant circumstances," Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 627, 199 So. 294, 1 So.2d 242, 245. The measure of prudence which is an element of the definition must in turn involve reasonable probabilities according to normal human experience. Such probability in turn involves not an absolute prescience but a degree of foreseeability which consists with normal experience and observation and which should equip the party sought to be charged with a prudence that envisages harm as a reasonable likelihood. Time, place and circumstances must be taken into account. (193 Miss. at 634, 635, 10 So.2d at 543).
Here, the vantage point from which foreseeability must be measured is the position of appellant before the accident. At that time it knew that its lines were within its easement on a public street and that they were constructed and maintained at a height well above the minimum required by the National Safety Code. It also knew that a series of tenants at 104 West Goldstein Street had maintained television antennas, first, a tripod tower was used until 1965, then a wooden pole which was still available at the time of the accident. Under these circumstances it might have been reasonable for the appellant to foresee that the tenant at this location would put up another antenna, but it was not required to foresee that in doing so a person would negligently select a place and a method of erecting the pole as did the decedents in this case.
It must be remembered that we are not dealing with a case where electric lines overhang or otherwise encroach upon private property, but are dealing with a case where the lines are within an authorized easement and where an adult was attempting to place an antenna at a place where he knew he was creating a substantial risk for contact with the electric lines which were clearly visible to him. Under these circumstances, *744 the cases from other jurisdictions seem to uniformly support the proposition that it is not foreseeable as a reasonable probability that adults will attempt to place TV antennas so as to create a substantial risk of contact with clearly visible electric lines. Rudd v. Pub. Serv. Co. of Oklahoma, 126 F. Supp. 722 (N.D.Okl. 1954); Carr v. Kentucky Utilities Co., 301 S.W.2d 894 (Ky. 1957); Daniel v. Oklahoma Gas & Electric Co., 329 P.2d 1060 (Okl. 1958); Johnson v. Johnson City, 41 Tenn. App. 148, 292 S.W.2d 794 (1956).
The majority opinion correctly holds that the decedent was guilty of negligence as a matter of law. It is the opinion of this writer that this negligence was the sole proximate cause of the accident which resulted in his death. There is no doubt from the evidence in this case that the decedent was thoroughly familiar with the street along which the lines ran. The lines were clearly visible to him and he knew they supplied electricity to the house where he was to put up the antenna. In Miss. Power Co. v. Nail, 211 So.2d 815 (Miss. 1968), we quoted with approval a statement from LeVonas v. Acme Paperboard Co., 184 Md. 16, 40 A.2d 43 (1944), wherein it is said:
In accordance with these basic principles, the law does not require that a person, who maintains even so deadly an instrumentality as a high voltage electric wire, shall anticipate at his peril every possible fortuitous circumstance under which some person might make a contact with the wire, resulting in injury or death. * * * Electricity is now used so universally in city and country, in home and in business, for illumination and motive power, and for communication and transportation, that it is a matter of common knowledge that any line carrying electric current is dangerous to a more or less degree. The fact that a wire is charged with electric current is notice of danger, and any person mindful of his safety should treat it with caution. (Emphasis added). (211 So.2d at 820).
It is clear from the evidence in this case that the transmission lines as constructed and maintained were safe for the ordinary use of the street and the adjacent property. Although appellant was charged with the knowledge that many TV antennas had been erected in the small town of Hollandale, such knowledge did not require a change in appellant's manner of operation. Of course, everyone concedes that electric lines are dangerous, but liability does not rest on danger and the mere possibility of an accident is not enough to require the power company to alter its method of operation.
For the foregoing reasons, I would reverse the judgment of the trial court and enter judgment here for the appellant.
SMITH and ROBERTSON, JJ., join in this dissent.
NOTES
[*] NOTE: Whitescarver v. Mississippi Power & Light Co., 5 F. Supp. 948 (D.C.Miss. 1932) aff. 68 F.2d 928 (5th Cir.1934); White v. Mississippi Power & Light Company, 196 So.2d 343, 30 A.L.R.3d 754 (Miss. 1967); Galloway v. Singing River Electric Power Ass'n, Inc., 247 Miss. 308, 152 So.2d 710 (1963); Mississippi Power Company v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963); Delta Electric Power Association v. Burton, 240 Miss. 209, 126 So.2d 258, suggestion of error overruled, 240 Miss. 209 at 223-224, 126 So.2d 258, 866 (1961); Mississippi Power & Light Company v. Dulaney, 239 Miss. 460, 123 So.2d 845 (1960); Grice v. Central Electric Power Association, 230 Miss. 437, 92 So.2d 837, suggestion of error overruled in part, sustained in part, 230 Miss. 437 at 456-458, 96 So.2d 909 (1957); 4-County Electric Power Ass'n v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191 (1954); Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859, suggestion of error overruled, 214 Miss. 397 at 417-421, 59 So.2d 75 (1952); Roberts v. Mississippi Power & Light Co., 193 Miss. 627, 10 So.2d 542 (1942); Mississippi Power & Light Co. v. Goosby, 187 Miss. 790, 192 So. 453 (1939); Farmers Gin Co. v. Leach, 178 Miss. 784, 174 So. 566 (1937); Henry v. Mississippi Power & Light Co., 166 Miss. 827, 146 So. 857 (1933); Mississippi Power Co. v. Thomas, 162 Miss. 734, 140 So. 227, 84 A.L.R. 679 (1932); Williams v. City of Canton, 138 Miss. 661, 103 So. 811 (1925); Laurel Light & Ry. Co. v. Jones, 137 Miss. 143, 102 So. 1 (1924); Cumberland Telephone and Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 So. 824 (1913); Potera v. City of Brookhaven, 95 Miss. 774, 49 So. 617 (1909).